*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0092P (6th Cir.)
File Name: 01a0092p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

　　　　　*v.*

WALTER COATOAM,
　　　　　*Defendant-Appellant.*

No. 00-3001

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 97-00105—Donald C. Nugent, District Judge.

Submitted: March 7, 2001

Decided and Filed: March 30, 2001

Before: MARTIN, Chief Judge; MOORE, Circuit Judge;
TARNOW, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Charles E. Fleming, FEDERAL PUBLIC
DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant.

---

[*]The Honorable Arthur J. Tarnow, United States District Judge for
the Eastern District of Michigan, sitting by designation.

1

Nancy L. Kelley, UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Walter Coatoam ("Coatoam") challenges the district court's decision to revoke his sentence of probation and sentence him to a term of four months' imprisonment and two years' supervised release. While Coatoam admits to violating the terms of his probation, specifically his obligation to report for periodic drug testing and counseling, he contends that the district court erred in its application of 18 U.S.C. § 3565(b)(3), which requires mandatory probation revocation if a defendant "refuses to comply with drug testing" as imposed by § 3563(a)(4). While § 3563(a)(4) used to require a defendant to submit to drug testing as a mandatory condition of probation, that section was renumbered and is now found at 18 U.S.C. § 3563(a)(5). New § 3563(a)(4) imposes a mandatory condition of probation on defendants convicted of crimes of domestic violence and requires them to attend an offender rehabilitation program.

According to Coatoam, § 3565(b)(3) does not apply to him because he committed the crime of theft of public funds, not a crime of domestic violence. Asserting that the district court erroneously believed it was required to revoke his probation under § 3565(b)(3), Coatoam seeks a remand to the district court for reconsideration of his sentence.

Coatoam's reading of the statute, while faithful to the statute's plain language, produces an absurd result, is at odds with Congress's intent and is, therefore, incorrect. We hold, as a matter of first impression in this circuit, that the proper reading of § 3565(b)(3) requires probation revocation for a defendant's failure to submit to drug testing when drug testing was imposed as a condition of probation. Because the district court properly revoked Coatoam's probation, whether or not

its decision was based on a correct understanding of § 3565(b)(3), we **AFFIRM** the district court's judgment.

## I. BACKGROUND

On June 9, 1998, Coatoam pleaded no contest to one count of theft of public funds in violation of 18 U.S.C. § 641. He was sentenced to five years of probation and ordered to pay restitution in the amount of $26,275 to the Social Security Administration, $5,426.60 to the Railroad Retirement Board, and a $50 special assessment. As part of his probation, Coatoam was required to submit to mental health aftercare, mandatory drug testing, drug counseling, and six months of home confinement. In November 1999, the United States Probation Office submitted a petition to the district court alleging that Coatoam had failed to comply with the conditions of probation and requesting a court hearing.

Coatoam appeared at a hearing before the district court on December 9, 1999 and conceded that he had not attended drug testing, counseling, or mental health aftercare.[1] The district judge indicated at the hearing that he believed he was statutorily required to revoke Coatoam's probation. Joint Appendix ("J.A.") at 56 ("I'm also troubled by the fact that I think that if you violate the term of probation by intentionally failing to submit to a drug urinalysis, that the statute requires revocation. And I think that is correct, and I don't think I have any discretion as to that at this point."). The district judge then revoked Coatoam's probation and sentenced him to four months of incarceration and two years of supervised release but invited counsel to brief the question whether he was required to revoke probation or whether the issue was committed to his discretion.

---

[1]Coatoam's lawyer pointed out, and it was not disputed, that Coatoam had fulfilled every other condition of his probation, including prompt restitution to the government. Coatoam stated that he failed to attend the drug counseling because there was no bus which could get him to the counseling site and back, after work, before the bus service stopped running.

Coatoam filed a Motion to Reconsider Revocation of Probation in which he briefed the issue whether probation revocation was mandatory. The district court entered a marginal order on the motion stating: "Mr. Coatoam's probation was not revoked because the Court believed it was mandatory. Mr. Coatoam's probation was revoked for his adamant refusal to abide by conditions of probation." J.A. at 37. Coatoam filed a timely notice of appeal to this court.

On appeal, Coatoam challenges the district court's denial of his motion to reconsider. He argues first that the plain language of § 3565(b)(3) does not apply to him and that revocation of his probation is not mandatory. Coatoam then disputes the propriety of the district court's marginal order, noting that the marginal order is based on different reasoning than was reflected in the order given at the probation revocation hearing. Coatoam argues that, despite the marginal order, the district court clearly believed that revocation of probation was mandatory. Therefore, he asserts, the district court's order was an abuse of discretion which must be vacated.

The government urges us to hold that § 3565(b)(3) requires mandatory probation revocation for failure to comply with drug testing and counseling, as imposed by § 3563(a)(5), because any other interpretation of § 3565(b)(3) would lead to a result which is absurd and obviously inconsistent with Congress's intent. According to the government, "[c]learly Congress intended that refusal to comply with drug testing would violate a condition of probation requiring drug testing." Appellee's Br. at 12. In the alternative, the government asserts that, even if revocation were not mandatory, the district court did not abuse its discretion by denying Coatoam's motion for reconsideration because Coatoam admitted to violating his probation.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.

A close analysis of the structure and language of these related statutory provisions reveals that the problem with the statute before us is the result of a drafting error, not any ambiguity about Congress's intent. Instead of creating more confusion and holding the statute to its literal and implausible reading, we hold that the government's proposed reading of § 3565(b)(3) is the correct one.

### III.  DISTRICT COURT'S EXERCISE OF DISCRETION

Having rejected Coatoam's suggested interpretation of the statute, we turn to his contention that the district court erred by revoking his probation. Coatoam does not challenge the length of his sentence; instead, he focuses his appeal on the question whether the district court erroneously revoked his probation because it believed it was required to do so. Despite the fact that the district court disclaimed any reliance on 18 U.S.C. § 3565(b)(3) for the proposition that it was required to revoke probation after the defendant admitted to violating the conditions of his probation, the district court clearly did not act in error in light of the above analysis of § 3565(b)(3). Because the district court was, on our interpretation the statute, required to revoke Coatoam's probation, it is irrelevant whether the district court believed it was acting pursuant to its discretion. We were not called upon to review the length of Coatoam's sentence. Therefore, we may end our analysis by concluding that, whatever its reasoning, the district court reached the proper outcome in this case.

---

supervised release, § 7B1.4 and its application notes are not binding on the district courts. *United States v. West*, 59 F.3d 32, 33 (6th Cir.), *cert. denied*, 516 U.S. 980 (1995). While we are not bound to follow these policy statements, nevertheless the government is correct to note that we may properly consider the application note as further evidence of the appropriate reading of the cross-reference in the statute.

### II.  ANALYSIS

We are the first appellate court to review 18 U.S.C. § 3565(b)(3).[2] The provision, which was enacted in 1994, *see* Violent Crime Control and Law Enforcement Act of 1994 ("Crime Control Act"), Pub. L. No. 103-322, § 110506(b), 108 Stat. 1796, 2017, provides for mandatory revocation of probation if the defendant:

> [R]efuses to comply with drug testing, thereby violating the condition imposed by section 3563(a)(4).

18 U.S.C. § 3565(b)(3). Section 3563(a)(4) was also enacted in 1994. It stated:

> (a)  Mandatory conditions.—The court shall provide, as an explicit condition of a sentence of probation—
>
> ***
>
> (4)  for a felony, a misdemeanor, or an infraction, that the defendant refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on probation and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance, but the condition stated in this

---

[2]Two other courts have noted a related cross-referencing problem but they have dismissed the problem without discussion. These courts have reviewed challenges to 18 U.S.C. § 3583(d), which requires courts to impose, inter alia, mandatory drug testing as a condition of supervised release. The section states that the drug testing "may be ameliorated or suspended by the court as provided in section 3563(a)(4)." The Ninth Circuit found that "[a]lthough section 3583(d) refers to section 3563(a)(4), this is clearly a ministerial error." *United States v. Vinegar*, No. 97-50450, 2000 WL 329217, *1 n.3 (9th Cir. March 20, 2000). Similarly, the Middle District of Alabama noted that "[t]he reference to § 3563(a)(4) is erroneous, and § 3563(a)(5) is the intended reference." *United States v. Smith*, 45 F. Supp. 2d 914, 917 n.7 (M.D. Ala. 1999) (citing H.R. Conf. Rep. No. 105-405 (1997) which proposed an amendment to change reference to § 3563 from "paragraph (4)" to "subsection (a)(5)").

paragraph may be ameliorated or suspended by the court for any individual defendant if the defendant's presentence report or other reliable sentencing information indicates a low risk of future substance abuse by the defendant.

Crime Control Act, Pub. L. No. 103-322, § 20414(b), 108 Stat. 1796, 1831 (codified at 18 U.S.C. § 3563(a)(4)). As part of the same Act, a second § 3563(a)(4) was added to the statute. This provision stated:

> (a) Mandatory conditions.—The court shall provide, as an explicit condition of a sentence of probation—
>
> ***
>
> (4) for a domestic violence crime as defined in section 3561(b) by a defendant convicted of such an offense for the first time that the defendant attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court . . . .

Crime Control Act, Pub. L. No. 103-322, § 320921(b), 108 Stat. 1796, 2130 (codified at 18 U.S.C. § 3563(a)(4)). For a two-year period of time, § 3563(a) contained two paragraphs numbered "(4)".

In 1996, § 203 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, 1227, corrected the numbering problem in § 3563 of the Crime Control Act by designating the paragraph (4) which mandated drug testing as paragraph (5). No change, however, was made to the cross-reference in § 3565(b)(3).

## A.  Language of § 3565(b)(3)

As always, we first look to the language of the statute to divine its meaning. *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000). Section 3565(b)(3) clearly requires probation revocation for defendants who have failed to comply with drug testing. It also clearly points readers to

Stat. 1796, 2017 (codified at 18 U.S.C. § 3583(g)(3)). The similarities between § 3565 and § 3583 following the amendments reveal that, just as Congress intended for there to be mandatory revocation of supervised release for failure to submit to mandatory drug testing in § 3583(g)(3), Congress intended there to be mandatory revocation of probation for failure to submit to mandatory drug testing in § 3565(b)(3).

Finally, a third amendment to § 3583(d), which can be found at Pub. L. No. 103-322, § 320921(c), 108 Stat. 1796, 2130-31, provided the following:

> The court shall order as an explicit condition of supervised release for a defendant convicted for the first time of a domestic violence crime as defined in section 3561(b) that the defendant attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court . . . .

This amendment offers further proof that § 3583(d)'s reference to § 3563(a)(4) is clearly an error: the reference must be to what is now § 3563(a)(5) because § 3583(d) already contains within it the condition relating to domestic violence offenders. Had Congress meant for § 3583(d) to refer to the conditions imposed on domestic violence offenders at § 3563(a)(4), it need not have cited to an outside statute. Indeed, such a citation would have been both redundant and confusing.[4]

---

[4] The government calls our attention to Application Note 5 to U.S.S.G. § 7B1.4 as further evidence of Congress's desire to make revocation of probation mandatory for failure to comply with drug testing. Section 7B1.4 deals with terms of imprisonment after violations of probation or supervised release. Application Note 5 reads: "Upon a finding that a defendant violated a condition of probation or supervised release by . . . refusing to comply with a condition requiring drug testing, the court is required to revoke probation or supervised release and impose a sentence that includes a term of imprisonment. 18 U.S.C. §§ 3565(b), 3583(g)."

Because the Sentencing Commission has issued only policy statements, not guidelines, with respect to the revocation of probation or

are nearly identical to the mandatory conditions for probation found in § 3563(a). The amendment most relevant to our purposes, which can be found at Pub. L. No. 103-322, § 20414(c), 108 Stat. 1796, 1831, added the following language to § 3583(d):

> The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter . . . for use of a controlled substance. The condition stated in the preceding sentence may be ameliorated or suspended by the court as provided in section 3563(a)(4).

18 U.S.C. § 3583(d). There can be no doubt that the reference to § 3563(a)(4) in this amendment is an error. The first sentence clearly adds mandatory testing for use of controlled substances as a condition of supervised release. The second sentence clearly refers to this drug testing condition as it references readers to § 3563(a)(4). We know that Congress initially enacted one § 3563(a)(4) that required drug testing as a mandatory condition of probation and that this section is now found at § 3563(a)(5). The very language of the statute, therefore, compels our conclusion that Congress intended the second sentence to cross-reference readers to a related statute that imposes mandatory drug testing. Based on the language in this amendment, we conclude that, just as with § 3583(d), which establishes conditions for supervised release, so too with § 3565(b)(3), which establishes conditions for probation, may we infer Congress's intent to cross-reference the provision in § 3563(a) requiring drug testing.

Our conclusion is bolstered by another relevant amendment, which, corresponding to an amendment to § 3565(b)(3), establishes mandatory revocation of a defendant's supervised release if the defendant "refuses to comply with drug testing imposed as a condition of supervised release." Pub. L. No. 103-322, § 110505, 108

§ 3563(a)(4) in order to establish that drug testing was imposed as a mandatory condition of probation. Section 3563(a)(4), in turn, clearly establishes that, as a mandatory condition of probation, domestic violence offenders must attend offender rehabilitation programs. Read together, the plain meaning of § 3565(b)(3), with its cross-reference to current § 3563(a)(4), requires courts to revoke probation for any defendant who has been convicted of a crime of domestic violence and is required to attend a rehabilitation program, but who refuses to comply with mandatory drug testing. Not only is this reading inartful, it is also nonsensical.

In fact, such a reading arguably renders § 3565(b)(3) a nullity because, in order for a court to apply § 3565(b)(3), a defendant would have to refuse to comply with drug testing as imposed by a condition of probation which condition does not, on its face, require drug testing. There is only one conceivable circumstance in which § 3565(b)(3), with the cross-reference as written, could be invoked by a court: if a domestic violence offender was sentenced to a domestic violence rehabilitation program and, as part of the rehabilitation, was required to undergo drug testing and failed to submit to the testing. This reading is, however, strained at best and is not found in the current language of § 3563(a)(4), which, as noted, makes no mention of drug testing at all.

Following the government's suggestion to read § 3565(b)(3) as requiring revocation of probation for failure to submit to drug testing when a defendant is required, as a condition of probation, to submit to drug testing clearly makes more sense. This reading is premised on the idea that Congress made a simple drafting error either when, in 1996, it designated the mandatory condition for domestic violence offenders as subsection (a)(4) instead of (a)(5), or when it forgot to change all cross-references from § 3563(a)(4) to § 3563(a)(5). At first glance, the Supreme Court's preference for a statute's "plain meaning" over judicial interpretive discretion weighs against the government's proposed reading. When, however, a plain meaning analysis of a statute produces an absurd result, in that the interpretation is clearly

at odds with Congress's intent in drafting the statute, then the language of the statute must yield to interpretive guidance from legislative history or statutory structure. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. In such cases, the intention of the drafters, rather than the strict language, controls.") (internal citation omitted); *see also Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 527 (1989) (Scalia, J., concurring) (noting that when literal reading of statute produces absurd or unconstitutional result, courts may look outside the statute's language to confirm that Congress did not intend such a result).

A literal reading of § 3565 not only produces an absurd result but it also violates the canon of statutory construction that discourages courts from adopting a reading of a statute that renders any part of the statute mere surplusage. *Bailey v. United States*, 516 U.S. 137, 146 (1995) (noting that each word in statute is intended to have "particular, nonsuperfluous meaning"). Were we to adopt Coatoam's literal reading of the statute, we would, in the vast majority of cases, be rendering § 3565(b)(3) mere surplusage because, as noted, there is only one conceivable circumstance in which a court could invoke the provision. That circumstance, i.e., the domestic violence offender sentenced to a term of probation who refuses to submit to mandatory drug testing which was required as part of a domestic violence offender rehabilitation program, involves an extremely narrow reading of the statute and would apply to only a tiny fraction of those defendants required to submit to drug testing as a condition of probation. Therefore, in order to do "the least damage" to the statute, we must look beyond the statute's plain language to discern the statute's meaning. *Herrmann v. Cencom Cable Assocs.*, 978 F.2d 978, 983 (7th Cir. 1992) ("Condemned by contradictory enactments to dishonor some bit of text, judges must do the least damage they can.").

## B.  Legislative Structure

We may properly examine the structure of the legislation passed in 1994 for interpretive assistance in deciphering Congress's meaning.[3]  *See Bailey*, 516 U.S. at 145 (noting that courts "consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme"); *Reno v. Koray*, 515 U.S. 50, 56-57 (1995) (determining meaning of one term in the Sentencing Reform Act of 1984 by reference to the same term in Bail Reform Act of 1984 because Congress presumably confers consistent meaning on terms in related legislation); *see also Choice*, 201 F.3d at 840 ("[T]his court also looks to the language and design of the statute as a whole in interpreting the plain meaning of statutory language.") (internal quotation omitted).

First, it does not strain reason to accept that Congress intended its cross-reference in § 3565(b)(3) to refer to the paragraph in § 3563(a) that requires mandatory drug testing as a condition of probation.  At the time of enactment, Congress was correct to cross-reference § 3563(a)(4) in newly drafted § 3565(b)(3).  Confusion arose only because Congress, presumably inadvertently, enacted a second subsection (a)(4).  Such an oversight is perhaps not surprising given the length and breadth of the Crime Control Act.  But Congress's intent to revoke probation for those defendants who are required to submit to drug testing and fail to do so cannot be in doubt.  For evidence of Congress's intent, we need only look to § 3583(d), a provision similar to § 3563(a), which provides for conditions of supervised release and was also amended by the Crime Control Act of 1994.

The Crime Control Act added several new sections to § 3583(d) regarding supervised release that are relevant to this case.  As a result of these amendments, § 3583(d) now contains mandatory conditions for supervised release which

---

[3]There is virtually no legislative history regarding the provisions at issue in this case.  Reference to committee reports and other such sources offer no insight into what appear to be plain drafting errors in the statute.