2015 CO 20

**In re The PEOPLE of the State of Colorado, Plaintiff,**

v.

**Zachariah M. JONES, a/k/a Zackariah M. Jones, Defendant.**

**Supreme Court Case No. 14SA284**

Supreme Court of Colorado.

April 6, 2015

Attorneys for Plaintiff: Mitchell R. Morrissey, District Attorney, Second Judicial District, Robert J. Whitley, Chief Appellate Deputy District Attorney, Denver, Colorado

Attorneys for Defendant: Douglas K. Wilson, Public Defender, Jud Lohnes, Deputy Public Defender, Denver, Colorado

JUSTICE COATS delivered the Opinion of the Court.

¶ 1 Jones petitioned for relief pursuant to C.A.R. 21 from an order of the district court granting the prosecution's motion to revoke his bail bond in its entirety and order that he be held without bond pending resolution of charges in a different district. The district court reasoned that it was granted the power to do so by section 16–4–105(3), C.R.S. (2014), upon concluding that another court had found probable cause to believe Jones committed a felony while released on bond. Jones appealed to the court of appeals according to the expedited procedure of section 16–4–204, C.R.S. (2014), but that court found itself to be without jurisdiction to entertain an expedited appeal from an order entered pursuant to section 105(3).

¶ 2 Because Colorado's statutory scheme governing release on bail entitled Jones to an expedited review of the district court's order revoking his existing bond and declining to set another pending trial, the court of appeals erred in concluding that it lacked jurisdiction to entertain his appeal. Because section 105(3) merely empowered the district court to have Jones brought before it for purposes of modifying the conditions of his pretrial release, the district court erred in revoking his existing bond and denying him a right to pretrial release altogether. The rule is therefore made absolute, and the matter is remanded to the district court with directions to reinstate Jones's bail bond or change any condition thereof, as authorized by statute.

## I.

¶ 3 In October 2013, Zachariah M. Jones was arrested, charged, and released on bond, in connection with several felony drug offenses in Denver County. Some four months later, the Denver District Attorney moved to revoke his bond, alleging that while Jones was released on bond in the present case, a court in Adams County issued a warrant for his arrest, based on conduct resulting in a charge of second degree assault. Relying on a provision of section 16–4–105(3), C.R.S. (2014), the motion asserted that the district court was empowered to revoke the defendant's bond because, during the time he was released on that bond, a competent court had found probable cause to believe he committed a felony. After hearing the motion, the Denver District Court granted it; revoked the defendant's bond in this case; and declined to reassess bond until the Adams County case had been resolved.

¶ 4 The defendant appealed the district court's order to the court of appeals pursuant to the expedited procedures set forth in section 16–4–204, C.R.S. (2014). In a published opinion, the court of appeals concluded that it lacked jurisdiction under section 204 and dismissed the defendant's appeal. The appellate court reasoned that its power of review pursuant to this statutory provision included only review of those orders entered pursuant to three specifically enumerated statutory sections, none of which was section 16–4–105.

¶ 5 The defendant petitioned this court pursuant to C.A.R. 21 for relief from the district court's "no-bond hold." In issuing our rule to show cause, we expressly ordered the district attorney to also address the defendant's entitlement to review according to the expedited review provisions of section 16–4–204.

## II.

¶ 6 Exercise of this court's original jurisdiction is entirely within its discretion. *People v. Nichelson*, 219 P.3d 1064, 1066 (Colo.2009). We have often deemed relief pursuant to C.A.R. 21 appropriate to correct an abuse of discretion or an excess of jurisdiction where no other adequate remedy exists. *See, e.g., id.*; *Pearson v. Dist. Court*, 924 P.2d 512, 514 (Colo.1996). As recognized by both statute and rule, a review of rulings affecting a criminal defendant's release pending trial, by the very nature of such rulings, can generally serve a useful purpose only if it is permitted immediately, without awaiting a final judgment in the case. *See* § 16–4–204(1), C.R.S (2014) (permitting appeal after

entry of order); C.A.R. 9(a) ("An appeal authorized by law from an order refusing or imposing conditions of release shall be determined promptly."). The published opinion of the court of appeals narrowly construing its jurisdiction over bond orders has not only left the defendant without any other meaningful remedy in this case; because the statute it construes purports to provide the exclusive method of appellate review for both pretrial and post-conviction bond orders, that judgment effectively eliminates any meaningful right of review for a large class of unreleased defendants.

## III.

¶ 7 At least since the enactment of Colorado's Criminal Procedure Code in 1972, matters concerning the types and conditions of both pretrial and post-conviction bail bonds, the requirements for setting and modifying those bonds, and the review of such settings or modifications, as well as matters concerning the forfeiture, termination, and enforcement of bail bonds and exoneration from bond liability have, within constitutional limitations, see Colo. Const. art. II, § 19, been governed by statute in this jurisdiction. See ch. 44, 1972 Colo. Sess. Laws 190–268 (enacting Colorado Code of Criminal Procedure, including bail provisions). More specifically, parts 1 and 2 of title 16, article 4, of the revised statutes prescribe the mechanics of release from custody pending final adjudication of criminal charges. As relevant here, sections 101 and 102 of that article affirm that all persons, with certain narrowly defined exceptions, are bailable by sufficient sureties pending disposition of the charges against them, and dictate that upon request by any person in custody for whom the court has not already set bond, that person shall be brought before the court and, as long as the offense for which he was arrested is bailable, shall have bond and conditions of release set by the court. §§ 16–4–101 to –102, C.R.S. (2014).

¶ 8 In addition to providing for an early determination of the type of bond and conditions of release for all bailable defendants, the statutory scheme details the purposes to be served by, and the criteria to be considered in making, those determinations, see § 16–4–103, C.R.S. (2014) (Setting and selection type of bond—criteria); the various types of pretrial bond available for setting by the court, see § 16–4–104, C.R.S. (2014) (Types of bond set by the court); specific conditions of release to be made applicable to bonds, see § 16–4–105, C.R.S. (2014) (Conditions of release on bond); and authorization for the court to modify the conditions of bond, including the procedural prerequisites for doing so, see § 16–4–109, C.R.S. (2014) (Reduction or increase of monetary conditions of bond—change in type of bond or conditions of bond—definitions). Of particular relevance to the district court's action in this case, section 16–4–105(3) mandates that every bond include the condition that the released person not commit any felony while free on bail bond. In addition to requiring the imposition of this condition, section 105(3) also authorizes the court to take particular action concerning the defendant's bond "if it is shown that a competent court has found probable cause to believe that the defendant has committed a felony while released, pending the resolution of a prior felony charge."

¶ 9 Further, the statutory scheme not only provides its own form of appellate review, but in fact mandates that the expedited procedure prescribed by it be the exclusive method of appellate review of orders entered pursuant to section 16–4–104 (Types of bond set by the court), section 16–4–107 (formerly, Reduction or increase of bail—change in type of bond), or section 16–4–201 (Bail after conviction). See § 16–4–204. Because amendments to the statutory scheme in 2013 redesignated the content of section 16–4–107, with only minor changes, as section 16–4–109, without similarly amending the reference to section 107 in the scheme's provisions for appellate review, see ch. 202, sec. 2, § 16–4–109, 2013 Colo. Sess. Laws 830–31; and because the statutory section currently designated section 107 provides for a motion for reconsideration of monetary conditions of bond rather than a court order of any kind, see § 16–4–107, C.R.S. (2014); the question whether the district court's order in this case falls within the scope of the statutorily prescribed expedited appellate review procedure necessarily entails two separate inquiries:

first, whether the orders appealable by section 204 include orders currently authorized at section 109, and second, even if so, whether the district court's order at issue in this case constitutes such an order.

### A.

¶ 10 A statute has meaning according to the legislative intent expressed in the language of the statute itself. *Pham v. State Farm Auto. Ins. Co.*, 2013 CO 17, ¶ 13, 296 P.3d 1038, 1043. When the language of a statute is susceptible of more than one reasonable understanding and is therefore considered ambiguous, or when there is conflicting language, a substantial body of interpretive aids, either provided by the legislature to explain its own drafting conventions and preferences for resolving conflicts, *see* tit. 2, art. 4, C.R.S. (2014), or developed by the courts over centuries, *see generally* Norman J. Singer & Shambie Singer, *Sutherland Statutes & Statutory Construction* (7th ed.2007), determines which of these reasonable understandings embodies the legislative intent. *Frank M. Hall & Co., Inc. v. Newsom*, 125 P.3d 444, 448 (Colo.2005). Among these interpretive aids, we have often noted that when a statute is a component part of a more comprehensive scheme, the entire scheme should be understood, whenever possible, to give consistent, harmonious, and sensible effect to all of its parts, *Fierro v. People*, 206 P.3d 460, 461 (Colo.2009); and in this regard, we have also observed that the historical development of such a statutory scheme can often shed light on the purposes behind its various component parts, *Frank M. Hall*, 125 P.3d at 448.

¶ 11 Statutes referencing other statutes, without more, necessarily involve some degree of ambiguity. Regardless of the precision with which a cross-reference is made, it can generally be understood as a reference to either the designated provision as it existed at the time the referring statute was enacted or the provision of that designation at the time of the action to which it is made relevant by reference; or perhaps even the original content or substance of the designated code provision, despite that content having since been re-designated or relocated within the code. *See Herrmann v. Cencom Cable Assocs., Inc.*, 978 F.2d 978, 982–83 (7th Cir.1992) (considering all three possibilities). It has commonly been held that absent any contrary indication, a reference by precise designation to a subsequently amended statute is presumed to describe the content of the designated statute at the time of its incorporation, rather than at the time of any subsequent amendment. *See, e.g., Sch. Dist. No. 1 in Arapahoe Cnty. v. Hastings*, 122 Colo. 1, 220 P.2d 361, 364 (1950); *Schwenke v. Union Depot, Etc., Co.*, 7 Colo. 512, 4 P. 905, 907 (1884); *see also* Singer & Singer, *supra*, § 51:7. In this jurisdiction, however, the legislature has acted to abrogate this common law rule by declaring that "[a] reference to any portion of a statute applies to all reenactments, revisions, or amendments thereof." § 2–4–209, C.R.S. (2014).

¶ 12 While this legislatively imposed interpretative provision was clearly intended as a rejection of the common law resolution of this ambiguity, it does not, in and of itself, always provide an alternate solution to the problem. In the case of a statutory reorganization in particular, the rule of section 2–4–209 leaves unanswered the question whether an unaltered cross-reference to a particular provision of the code, following the re-designation and reenactment of the content of that provision, is to be understood as a reference to the new content found at the designated location or to the former content of that designation, at its new location in the statutory scheme. At least where, as here, the content of a referenced code provision has for the most part merely been moved to a different location as part of a general revision and reorganization, and the new content of the un-updated statutory reference would, in context, render the reference meaningless, the ambiguity must be resolved in favor of the latter rather than the former interpretation.

¶ 13 With or without a similar statutory abrogation of the common law presumption, a host of other jurisdictions, although not expressing themselves in identical terms, have arrived at substantially the same solution to the not uncommon occurrence of un-updated cross-references. *See Herrmann,*

978 F.2d at 983 ("Every new section or sentence in a text riddled with cross-references poses a risk that one of the references will point to thin air, or to a destination out of synch with the referring provision.... The best approach, we believe, is the one we have used here: treat the referring clause as continuing to point to its original target, even if that target moves or acquires a new number."); · *see also United States v. Bahe,* 201 F.3d 1124, 1136 (9th Cir.2000) (correcting cross-reference left un-updated by "inadvertent clerical error" of Congress during amendment of statute); *United States v. D'Amario,* 412 F.3d 253, 256 (1st Cir.2005) (same); *United States v. Griner,* 358 F.3d 979, 982 (8th Cir.2004) (same); *United States v. Coatoam,* 245 F.3d 553, 557, 560 (6th Cir. 2001) (correcting un-updated cross-reference as "simple drafting error"); *In re Chateaugay Corp.,* 89 F.3d 942, 954 (2d Cir.1996) (updating cross-reference as "technical drafting error" created when Congress revised and renumbered statute, but expressed no intent to make change that un-corrected cross-reference would effect); *Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor v. Peabody Coal Co.,* 554 F.2d 310, 331 (7th Cir.1977) (correcting cross-reference "left unmodified" after statutory amendment); *In re Koper,* 284 B.R. 747, 752 n.10 (Bankr.D.Conn.2002) (correcting un-updated cross-reference "left unaltered by virtue of a drafting or codification error"); *In re Gaumer,* 83 B.R. 3, 4 (Bankr.S.D.Ohio 1988) (correcting un-updated cross-reference after finding no indication in legislative history that any substantive change was intended by relocation of referent); *Providence & Worcester R.R. Co. v. Energy Facilities Siting Bd.,* 453 Mass. 135, 899 N.E.2d 829, 832 n.4 (2009) (correcting, as "scrivener's error," cross-reference to unrelated provision, caused by legislature's failure to update cross-references during amendment); *State ex rel. Gutbrod v. Wolke,* 49 Wis.2d 736, 183 N.W.2d 161, 164–65 (1971) (correcting un-updated cross-reference as "clerical error in numbering"); *cf. Robinson v. Wroblewski,* 704 N.E.2d 467, 473 (Ind.1998) (correcting erroneous cross-reference not a product of subsequent amendments to referent provision); *In re Thierry S.,* 19 Cal.3d 727, 139 Cal.Rptr. 708, 566 P.2d 610, 617 n.13 (1977) (similar); *In re Adoption of H.C.H.,* 297 Kan. 819, 304 P.3d 1271, 1285 (2013) (striking cross-reference that referred to no past or present statute).

**B.**

¶ 14 Understanding the reference in section 204 to be a reference to the statutory authorization for changes in the type or conditions of bond now designated section 16–4–109, the question remains whether, for purposes of appellate review, the order at issue here is properly characterized as an order entered pursuant to section 109. The court of appeals answered this question in the negative, finding that the trial court's order was entered pursuant to section 16–4–105(3), as distinguished from, rather than as well as, section 16–4–109.

¶ 15 Section 204 both provides for and makes exclusive an expedited procedure for the appellate review of orders entered pursuant to any of three expressly denominated statutory provisions. § 16–4–204(1). The first of these provisions mandates that the court determine which of various statutorily approved types of bond is appropriate for the pretrial release of the person in custody, subject to conditions authorized, or required, by section 105. *See* § 16–4–104. The second authorizes changes in the type or conditions of bond upon application by one of the parties, even after the defendant has been released on bond. *See* § 16–4–109 (formerly section 16–4–107). And the third authorizes the continuation of a defendant's pretrial bond or his release on another statutorily approved type of bond pending the determination of a motion for new trial or in arrest of judgment, or during any stay of execution, or pending review by an appellate court. *See* § 16–4–201, C.R.S. (2014).

¶ 16 Collectively, these three provisions authorize court orders for the determination, modification, and continuation of bail bonds, both before and after conviction. While other sections of the statutory scheme provide, for example, for specific goals, timing, grounds, limitations, and conditions, including special consequences of breaching particular conditions, these three statutory sections

represent, broadly speaking, the enabling provisions or procedural vehicles for virtually all orders affecting the types or conditions of bail bonds. Even the denial of an application for a bond or a motion for its modification is reasonably understood as an order pursuant to one of these provisions.

¶ 17 Section 109, in particular, authorizes courts, upon application by the district attorney or the defendant, to increase or decrease the financial conditions of bond; require additional security for a bond; dispense with security theretofore provided; or alter any other condition of a bond. It prescribes procedural requirements, including notice and hearings, as well as authorizing the issuance of warrants commanding peace officers to bring defendants without unnecessary delay before the court. As a further indication of its general applicability, section 109 guarantees the district attorney a right to appear and advise the court "at *all* hearings seeking modification of the terms and conditions of bond" (emphasis added).

¶ 18 By contrast, section 105, entitled "Conditions of release on bond," enumerates conditions that either may or must be included in every bond, or at least bonds in the prosecution of designated classes of offenses. With regard to two mandatory conditions in particular—that the released person appear at the time and place required and that he not commit a felony while free on bond— section 105 goes beyond simply mandating the condition itself and also addresses consequences of its breach. The statute specifies with regard to the former not only that it is a condition for the breach of which forfeiture is an available consequence, but that it is in fact the sole condition for which that consequence is available, § 16-4-105(1), C.R.S. (2014); and with regard to the latter, that even an apparent breach, as evidenced by a probable cause finding of another court, is proof enough to permit revocation of the defendant's release and modification of the conditions of his bond, § 16-4-105(3). While section 105 identifies forfeiture as a consequence of breaching the former condition, the court's authority to declare a forfeiture and the procedures for doing so are located elsewhere, at sections 16-4-111 and -114, C.R.S. (2014).

Similarly, while section 105 identifies a particular evidentiary basis for changing a defendant's bond, the general authorization and the procedures for changing the type or conditions of bond are found at section 16-4-109.

¶ 19 The court of appeals reasoned from our prior case law that rather than constituting an example of a change in type or condition of bond authorized by section 109, a change in bond for breach of the condition mandated by section 105(3)—that the released person not commit a felony while free on bond—must be *distinguished from* those changes authorized by section 109. Relying heavily on our refusal to apply an accelerated speedy trial requirement of an earlier incarnation of section 105(3), to bond modifications generally, *see People v. Mascarenas,* 706 P.2d 404, 406 (Colo.1985), the court of appeals concluded that these two sections must be mutually exclusive. Attaching a speedy trial consequence to an increase in the financial condition or security requirement of a bond under a particular set of circumstances or for one particular reason but not others, however, in no way suggests that an increase for that particular reason or under those circumstances is therefore not a change authorized by the general enabling provision at all.

¶ 20 Quite the contrary, on their face sections 109 and 105(3) are related as an authorization for the modification of bond conditions generally and the separate treatment of one particular bond condition. Rather than constituting different and distinct mechanisms or procedures, as the court of appeals concluded, section 109's authorization for the issuance of a warrant to compel the attendance of a previously released defendant, for example, merely provides a means for enforcing an order for the revocation of the defendant's release and modification of his bond, as more specifically authorized by section 105(3). Rather than creating a new power to compel the defendant's attendance and modify his bond, not already found in section 109, section 105(3) merely supplies a particular evidentiary justification for doing so.

¶ 21 The rationale for providing an expedited appellate review of orders setting or changing the types and conditions of bail

bonds is manifest and needs no further explanation or justification. No practical or policy justification has been suggested, and we can conceive of none, for depriving defendants disadvantaged by a change in their bond conditions according to section 105(3) of the same expedited review allowed for all other defendants dissatisfied with orders affecting the types or conditions of their bail bonds. Because the language of section 105(3) can be reasonably understood to describe one particular ground for effecting a change in bond conditions as authorized by section 109, and because this interpretation, unlike the narrow reading of the intermediate appellate court, gives consistent, harmonious, and sensible effect to, and furthers the purposes of, the statutory bail bond scheme as a whole, we conclude that, for purposes of the appellate review prescribed by section 204, an order premised on the evidentiary rule announced in section 105(3) is, at one and the same time, necessarily an order pursuant to section 109.

## IV.

¶ 22 Although the defendant therefore has an exclusive right of review in the appellate court, that right in no way limits this court's exercise of its original jurisdiction. *See* Colo. Const. art. VI, § 3. In light of the procedural history of this case, the urgency that attaches to the review of bail bond orders, and the fact that the matter at issue is one of statutory construction, fully briefed to and already partially resolved by this court in addressing the question of appellate review, we consider it appropriate to exercise our original jurisdiction and address the merits of the district court's order.

¶ 23 Section 105(3) mandates that a condition of every felony bond be that the released person not commit any felony while free on bond, and it empowers the court to take certain actions upon being shown that a competent court has found probable cause to believe the defendant has committed a felony while released. In the precise language of the statute, the action the court is empowered to take upon such a showing is "to revoke the release of the person, to change any bond condition, including the amount of any monetary condition." § 16–4–105(3). While it may have been arguable under the predecessor prohibition against committing another felony while on bond that revoking release, increasing the bail bond, and changing any bail bond condition were presented as alternatives, in a disjunctive series, *see* § 16–4–103(2)(c), C.R.S. (2012) (conveying "the power to revoke the release of the defendant, to increase the bail bond, or to change any bail bond condition"), since the 2013 amendments to the scheme this reading is no longer even facially available, *see* § 16–4–105(3); *see also* ch. 202, sec. 2, § 16–4–105(3), 2013 Colo. Sess. Laws 826 (enacting section 105(3) in its current form). Under current wording and punctuation, it is clear that the court is empowered "to revoke the release of the person" for one purpose and one purpose only: "to change any bond condition." § 16–4–105(3).

¶ 24 Given the only purpose for which a finding of probable cause is sufficient to justify the revocation of a defendant's release, the temporary nature of such a revocation is implicit. The language and syntax of the statute itself necessarily imply that such a defendant's release may be revoked only long enough for reconsideration of the conditions of his bond, unless that reconsideration results in an increase in the financial condition or security requirements of the bond such that he is unable to comply and again secure his release on bond. *See id.* To the extent some ambiguity could remain concerning the permanency of revocation, any construction permitting revocation of a defendant's release pending trial, or favorable resolution of his other felony charge, as the trial court ruled in this case, would seriously risk infringing on his constitutional entitlement to bail. *See* § 2–4–201(1), C.R.S. (2014) ("In enacting a statute, it is presumed that … [c]ompliance with the constitutions of the state of Colorado and the United States is intended…."); *People v. Thomas,* 867 P.2d 880, 883 (Colo.1994) ("When possible, statutes are to be construed in such manner as to avoid questions of their constitutional validity.").

¶ 25 Article II, section 19 of the Colorado Constitution provides that all persons, with

several specifically enumerated exceptions, shall be bailable by sufficient sureties pending disposition of the charges. Those exceptions are limited to charges of capital offenses and legislatively defined crimes of violence, under limited circumstances, where proof of the charged offense is also evident and the presumption of conviction is great. The constitutional exceptions to bailability clearly cannot be understood to include a mere finding of probable cause to believe a defendant, released on bond pending any felony charge, has committed another felony while free on that bond.

¶ 26 Nor can article II, section 19 be read to mandate no more than that non-excepted persons be bailable only until such time as the breach of a legislatively imposed condition has been demonstrated, to the extent required by the general assembly. The constitution unequivocally provides that all non-excepted persons shall be bailable "pending disposition of charges." Colo. Const. art. II, § 19(1). Whether or not this language admits of some ambiguity for other purposes, it cannot be reasonably understood to mean that such persons are bailable only so long as they comply with legislatively imposed conditions.

¶ 27 Notwithstanding the constitutional mandate that non-excepted persons be bailable, the legislative and judicial branches are not without recourse to act for the protection of the public. Article II, section 19 mandates only that all non-excepted persons shall be bailable "by sufficient sureties." In addition to describing the permissible types and conditions of bail bonds, the statutory scheme requires that the type and conditions of release set by the court be sufficient not only to reasonably ensure the appearance of the person as required but also to protect the safety of any person or the community. § 16–4–103(3)(a), C.R.S. (2014). While the defendant in this case may be constitutionally entitled to pretrial bail bond, the district court's discretion to change any condition of his bond must be exercised in light of these purposes and the condition imposed at section 16–4–105(3), that he shall not commit any felony while free on bond.

## V.

¶ 28 Because Colorado's statutory scheme governing release on bail entitled Jones to an expedited review of the district court's order revoking his existing bond and declining to set another pending trial, the court of appeals erred in concluding that it lacked jurisdiction to entertain his appeal. Because section 105(3) merely empowered the district court to have Jones brought before it for purposes of modifying the conditions of his pretrial release, the district court erred in revoking his existing bond and denying him a right to pretrial release altogether. The rule is therefore made absolute, and the matter is remanded to the district court with directions to reinstate Jones's bail bond or change any condition thereof, as authorized by statute.