Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
October 15, 2018

**2018 CO 81**

**No. 16S721, Ybarra v. Greenberg & Sada, P.C.—Finance, Banking, and Credit—
Insurance—Statutory Interpretation—Torts.**

Ybarra petitioned for review of the court of appeals' judgment affirming the

dismissal of her Colorado Fair Debt Collection Practices Act action against Greenberg &

Sada.  The district court dismissed for failure to state a claim, finding that damages arising

from a subrogated tort claim do not qualify as a debt within the contemplation of the Act.

The court of appeals agreed, reasoning that the undefined term "transaction" in the Act's

definition of "Debt," required some kind of business dealing, as distinguished from the

commission of a tort; and to the extent an insurance contract providing for the

subrogation of the rights of an insured constitutes a transaction in and of itself, that

transaction is not one obligating the debtor to pay money, as required by the Act.

The supreme court holds that because a tort does not obligate the tortfeasor to pay

damages, a tort cannot be a transaction giving rise to an obligation to pay money, and is

therefore not a debt within contemplation of the Act; and because an insurance contract

providing for the subrogation of the rights of a damaged insured is not a transaction

giving rise to an obligation of the tortfeasor to pay money, it also cannot constitute a

transaction creating a debt within contemplation of the Act. Accordingly, the judgment

of the court of appeals is affirmed.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2018 CO 81**

**Supreme Court Case No. 16SC721**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA485

**Petitioner:**

Francis Ybarra,

v.

**Respondent:**

Greenberg & Sada, P.C., a Colorado corporation.

**Judgment Affirmed**
*en banc*
October 15, 2018

**Attorneys for Petitioner:**
Vedra Law LLC
Daniel Vedra
Katherine Russell
        *Denver, Colorado*

**Attorneys for Respondent:**
Greenberg & Sada, P.C.
Alan Greenberg
        *Englewood, Colorado*

**Attorney for Amicus Curiae Administrator of the Uniform Consumer Credit Code:**
Cynthia H. Coffman, Attorney General
Frederick R. Yarger, Solicitor General
Nikolai N. Frant, Senior Assistant Attorney General
*Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Creditor Bar Association:**
Murr Siler & Accomazzo, P.C.
Jamie G. Siler
James Eckels
Kimberly L. Martinez
*Denver, Colorado*

**Attorney for Amicus Curiae Colorado Legal Services:**
Colorado Legal Services
Paul Chessin
*Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Trial Lawyers Association:**
Keating Wagner Polidori Free, P.C.
Ross W. Pulkrabek
*Denver, Colorado*

**Attorney for Amicus Curiae National Association of Subrogation Professionals:**
Poynter Law LLC
Jennifer A. Poynter
*Englewood, Colorado*

Borenstein Associates LLC
Irvin Borenstein
*Englewood, Colorado*

**CHIEF JUSTICE COATS** delivered the Opinion of the Court.

¶1    Ybarra petitioned for review of the court of appeals' judgment affirming the dismissal of her Colorado Fair Debt Collection Practices Act action against Greenberg & Sada. *See Ybarra v. Greenberg & Sada, P.C.*, 2016 COA 116, ___ P.3d ___. The district court dismissed for failure to state a claim, finding that damages arising from a subrogated tort claim do not qualify as a debt within the contemplation of the Act. The court of appeals agreed, reasoning that the undefined term "transaction," which it considered integral to the Act's definition of "Debt," can only be understood to require some kind of business dealing, as distinguished from the commission of a tort; and to the extent an insurance contract providing for the subrogation of the rights of an insured constitutes a transaction in and of itself, that transaction is not one obligating the debtor to pay money, as required by the Act.

¶2    Because a tort, as distinguished from a judgment awarding damages for its commission, does not obligate the tortfeasor to pay damages, it cannot be a transaction giving rise to an obligation to pay money, as required in order to constitute a debt within the contemplation of the Act; and because an insurance contract providing for the subrogation of the rights of a damaged insured is not a transaction giving rise to an obligation of the tortfeasor to pay money, but merely changes the person to whom the tortfeasor's obligation to pay is owed, it also cannot constitute a transaction creating debt within the contemplation of the Act. The judgment of the court of appeals is therefore affirmed.

## I.

¶3     Francis Ybarra filed suit in the Denver District Court against the law firm of Greenberg & Sada, alleging that it violated the Colorado Fair Debt Collection Practices Act by obtaining a judgment against her in the Denver County Court on behalf of State Farm Auto Insurance Company.  While represented by Greenberg & Sada, State Farm, as the subrogee of an insured to whom it had paid a claim for damages caused by Ybarra, had taken a default judgment against Ybarra.   In her complaint, Ybarra alleged particularly that in doing so Greenberg & Sada violated the Act in a number of ways, including by filing State Farm's negligence action in Denver rather than Jefferson County, where Ybarra is a resident; by using a false representation or deceptive means in attempting to collect a debt by filing for damages in tort; by providing an address for Ybarra's residence, where it knew or should have known she did not reside; by making false representations of the character, amount, or legal status of the "debt" by alleging that she owned the car she was driving, which she denied; and by failing to comply with the Act in various other ways.

¶4     Greenberg & Sada moved to dismiss pursuant to C.R.C.P. 12(b)(5) for failure to state a claim upon which relief could be granted.  The district court granted the motion, ruling that the subrogated tort claim upon which State Farm took a default judgment against Ybarra was not a debt as defined by the Act, and therefore the requirements for collection of a debt imposed by the Act did not apply to Greenberg & Sada.

¶5     On appeal by Ybarra, the court of appeals affirmed, relying largely on the reasoning of another division of the court of appeals in *Rector v. City and County of Denver*,

4

122 P.3d 1010 (Colo. App. 2005), to the effect that the Act regulates only the collection of obligations to pay money arising from consumer transactions. Specifically, the *Rector* division concluded that the undefined term "transaction" in the Act's definition of "Debt" necessarily refers only to consumer transactions. *Id.* at 1016. Notwithstanding some differences in language, the intermediate appellate court was persuaded by the reasoning of various federal courts construing the federal analogue to the Act, which courts concluded that the debt regulated by the federal act was limited to obligations to pay money arising from some kind of business dealing. *Id.*

¶6     We granted Ybarra's petition for a writ of certiorari to consider the question whether the insurance subrogation claim Greenberg & Sada helped State Farm to enforce should have qualified as a debt within the contemplation of the Colorado Fair Debt Collection Practices Act and, therefore, whether Ybarra's complaint alleging violation of the Act by Greenberg & Sada should not have been dismissed for failing to state a claim.

## II.

¶7     The Colorado Fair Debt Collection Practices Act protects individuals with at least certain types of debt from various practices used to collect that debt by regulating those in the business of collecting such debts in this jurisdiction. *See* §§ 5-16-101 to -135, C.R.S. (2018). As defined by the Act, "'Debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction, whether or not the obligation has been reduced to judgment," § 5-16-103(8)(a); but the same definition goes on to specify that "'Debt' does not include a debt for business, investment, commercial, or agricultural purposes or a debt incurred by a business," § 5-16-103(8)(b). The term "consumer," which

5

appears in the definition of "Debt," is also statutorily defined to mean "any natural person obligated or allegedly obligated to pay any debt." § 5-16-103(5). The term "transaction," from which the obligation or alleged obligation of a consumer to pay money must arise for it to qualify as a "Debt," is not statutorily defined.

¶8    Ybarra urged below, and continues to urge in this court, that the law firm of Greenberg & Sada is legally constrained by the provisions of the Act in assisting State Farm to bring its subrogation claim to judgment, for the reason that the obligation of Ybarra for which the law firm sought reimbursement is a debt within the contemplation of the Act and, similarly, by filing that claim in court the law firm acted in the role of debt collector. More specifically, Ybarra reasons that the tort resulting in damages for which State Farm compensated its insured, and for which compensation it now seeks reimbursement from her, amounts to a "transaction" as that term is used in the statutory definition of debt; and even if it did not, the insurance contract subrogating State Farm to the claim of its insured is separately a transaction, sufficient to bring the claim within the statutory meaning of debt. The validity of her assertions depends, therefore, not only on the precise meaning of the statutorily defined term "Debt," but also on the question whether either a tort or a contract subrogating the rights of the injured party creates an obligation on the part of the tortfeasor to pay money.

¶9    A statute has meaning according to the legislative intent expressed in the language of the statute itself. *People v. Jones*, 2015 CO 20, ¶ 10, 346 P.3d 44, 48. If a statute is clear and unambiguous, and is not in conflict with another statute, it must simply be applied as written. *Holcomb v. Jan-Pro Cleaning Sys. of S. Colo.*, 172 P.3d 888, 890 (Colo. 2007).

6

However, to the extent that the language of a statute is susceptible of more than one reasonable interpretation, and is therefore considered ambiguous, a substantial body of interpretive aids, either provided by the legislature to explain its own drafting conventions and preferences for resolving conflicts, *see* §§ 2-4-101 to -402, C.R.S. (2018), or developed by the courts over centuries, *see generally* Norman J. Singer & Shambie Singer, *Sutherland Statutes & Statutory Construction* (7th ed. 2007), is available to assist in determining which of these reasonable understandings embodies the legislative intent. *Jones*, ¶ 10, 346 P.3d at 48.

¶10    It is widely accepted, and we have long held, that a term that is not statutorily defined must be understood according to its ordinary meaning. *See Marquez v. People*, 2013 CO 58, ¶ 8, 311 P.3d 265, 268. Because, however, words frequently have more than one ordinary meaning, or at least more than one shading or nuance of meaning, and because even a dictionary definition broad enough to encompass a particular sense of a word does not establish that the term is ordinarily understood in that sense, *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 568 (2012), the precise meaning actually intended by an undefined term often depends upon other considerations altogether, like the context in which it is used, *Marquez*, ¶ 8, 311 P.3d at 268; *see also* § 2-4-102; *Jones*, ¶ 10, 346 P.3d at 48, the need to harmonize the entire statutory scheme in which it appears, *see Fierro v. People*, 206 P.3d 460, 463 (Colo. 2009), and any external factors to which amendments to that scheme were a response, *see Frank M. Hall & Co. v. Newsom*, 125 P.3d 444, 448 (Colo. 2005).

7

¶11 Determining the intended scope of the Act in particular presents certain interpretational challenges not only because some of its terms, like transaction, are not specifically defined, but also because even those essential terms that are specially defined, like "Debt" and "Consumer," appear from context to be intended at times in their more commonly understood implications, rather than as terms of art, or if not, to exhibit a circular quality by including the defined term itself in its own definition. Not only do the terms consumer and debt each include the other in their respective statutory definitions, but the statutory term "Debt" expressly purports to exclude some debts from the definition of "Debt" itself, including any "debt" incurred for specifically enumerated purposes.

¶12 Furthermore, by largely modelling itself after its federal counterpart, but at the same time truncating or altering, in different ways at different stages of amendment, the key federal definition of "Debt," the Act arguably unmoors its statutory definition of "Consumer" from any commonly understood meaning of that word. As defined by the Act, in the absence of some narrowing definition of "Debt," the term "Consumer" simply describes what is more typically designated a debtor, whether or not the purpose for which his obligation to pay was incurred bears any relation to consumption. The federal act expressly limits its definition of "Debt" to consumer-related payment obligations, thereby giving meaning to its use of the term consumer, rather than simply debtor, to refer to the individual with an obligation to pay; and although the Act originally eliminated this definitional limitation altogether, subsequent amendments to the Act include as part of the definition of "Debt" an express exclusion for any debts for business,

8

investment, commercial, or agricultural purposes. While the federal and state acts therefore narrow their respective definitions of debt and consumer from different perspectives—the one limiting the kinds of obligations that are included and the other specifying the kinds of obligations that are *not* included—both use the term "Consumer" to define and refer throughout to the debtor and both clearly exclude from the definition of debt any obligation to pay money incurred for many, if not all, non-consumer-related purposes.

¶13 For purposes of the subrogated tort claim at issue before us today, however, we need not definitively decide whether the amendments to the Act limiting the purposes for which a debt constitutes a "Debt" have effectively limited the term transaction solely to consumer transactions, as suggested by the court of appeals. It is enough here that a tort, at the very least, cannot be a transaction capable of giving rise to an obligation to pay money at all, and that a subrogated tort claim is at least not a transaction giving rise to an obligation *of the tortfeasor* to pay money. With regard to the first, Ybarra's assertion is refuted as much by the nature and meaning of "tort" as by the Act's definition of "Debt." With regard to the second, Ybarra's assertion is refuted by the fact that a contract for subrogation is not a transaction with the tortfeasor at all, much less one that creates an obligation of the tortfeasor to pay money.

¶14 While we have previously characterized the notion of a "tort" as notoriously difficult to define with precision, the term broadly refers to the breach of a general duty of care, as distinguished from the breach of a contract or other binding promise or agreement. *See Colo. Dep't of Transp. v. Brown Grp. Retail, Inc.*, 182 P.3d 687, 690 (Colo.

9

2008). Unlike contractual obligations, tort obligations arise from duties imposed by law. *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000). A tort has therefore been described as conduct that amounts to a legal wrong and that causes harm for which courts will impose civil liability. *E.g.*, Dan B. Dobbs et al., *The Law of Torts* § 1 (2d ed. 2011).

¶15     Unlike a contract, settlement, or other enforceable promise, from which an obligation to pay money itself can arise, in the absence of an agreement or settlement, a person cannot have a legal obligation to pay another for an injury he has caused until, at a minimum, it is judicially determined that he owed that party a duty, the injury resulted from his breach of that duty, and a judgment enters imposing damages. *See Vigil v. Franklin*, 103 P.3d 322, 325 (Colo. 2004) (generally enumerating the elements of a negligence claim). A tort, in and of itself, therefore cannot be a transaction out of which an obligation of a consumer to pay money can arise, and the legal process by which a tort claim can be reduced to a judgment legally obligating a defendant to pay money therefore cannot amount to the collection of a debt within the contemplation of the Act.

¶16     Similarly, although a subrogation contract may be a transaction, as that term is commonly understood, it is not, in and of itself, a transaction out of which an obligation to pay money arises at all, much less a transaction out of which arises an obligation of a debtor to pay his creditor. Rather than creating an obligation, subrogation, by definition, is merely an assignment of claims or rights, substituting one claim holder for another. *See Subrogation*, Black's Law Dictionary (10th ed. 2014); *cf. Allstate v. Med. Lien Mgmt.*, 2013 COA 88, ¶ 23, 354 P.3d 167, 172. However else it may be limited, the "transaction" out of

10

which arises an obligation of a consumer to pay money necessarily refers to a transaction between the person with the obligation to pay and the person to whom that obligation is owed. While a contract, or transaction, subrogating the claim of one person to another clearly cannot alter the nature of a debt merely by subrogating it, neither can it create a debt that did not already exist by the mere substitution of claim holders.

¶17 There is no dispute that the claim to which State Farm is subrogated in this case is a tort claim for negligent injury. For the reasons we have articulated, that tort claim itself did not obligate Ybarra to pay money and therefore the tort claim was not a debt within the contemplation of the Act. For the reasons we have similarly articulated, the contract subrogating State Farm to the tort claim of its insured did not obligate Ybarra to pay money but rather merely substituted one party holding the claim for damages caused by Ybarra's negligence for another. The subrogation contract in this case therefore did not convert the original tort claim of the victim to a debt, and the law firm seeking to have that tort claim reduced to a judgment on behalf of State Farm did not find itself in the role of debt collector within the contemplation of the Act.

### III.

¶18 Because a tort, as distinguished from a judgment awarding damages for its commission, does not obligate the tortfeasor to pay damages, it cannot be a transaction giving rise to an obligation to pay money, as required in order to constitute a debt within the contemplation of the Act; and because an insurance contract providing for the subrogation of the rights of a damaged insured is not a transaction giving rise to an obligation of the tortfeasor to pay money, but merely changes the person to whom its

11

obligation to pay is owed, it also cannot constitute a transaction creating debt within the

contemplation of the Act.  The judgment of the court of appeals is therefore affirmed.