# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 18, 2016          Decided April 14, 2017

No. 15-3006

UNITED STATES OF AMERICA,
APPELLEE

v.

MICHAEL PALMER, ALSO KNOWN AS TONY, ALSO KNOWN AS
KNOT, ALSO KNOWN AS JAMES,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:89-cr-00036-1)

---

*Sandra G. Roland*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender.

*Nicholas P. Coleman*, Assistant U.S. Attorney, argued the cause for appellee. With him on on the brief were *Elizabeth Trosman* and *Elizabeth H. Danello*, Assistant U.S. Attorneys.

Before: ROGERS, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

Concurring opinion filed by *Circuit Judge* BROWN.

ROGERS, *Circuit Judge*: This appeal challenges the amended judgment entered by the district court following the partial grant of appellant's motion pursuant to 28 U.S.C. § 2255. Section 2255(b) provides that upon granting such a motion, the district court shall "vacate and set . . . aside" the challenged judgment and either release the prisoner, resentence him, grant a new trial, or correct the challenged sentence. Appellant seeks to gain the benefit of the more lenient sentencing penalties under the Fair Sentencing Act of 2010 even though he was sentenced upon conviction at trial before that Act was effective and the Supreme Court has limited its retroactive effect. *See Dorsey v. United States*, 132 S. Ct. 2321, 2326 (2012).

The court need not decide today whether the Fair Sentencing Act applies to a resentencing upon a successful collateral attack pursuant to Section 2255. The district court left intact appellant's original trial sentence in 1989 except to apply intervening changes in the law on the merger of offenses. This limited revision to an otherwise final judgment was not a reevaluation of the appropriateness of appellant's original sentence. As a Section 2255 "correct[ion]," and not a "resentencing" at which the government has acknowledged the more lenient penalties under the Fair Sentencing Act would apply, this entitled appellant to no relief under the Act. Accordingly, because appellant's due process challenge to his continuing criminal enterprise ("CCE") conviction also affords no relief, we affirm.

## I.

On direct appeal, the court affirmed appellant's convictions of conspiracy and related offenses involving presiding over the large-scale distribution and sale of unlawful drugs in

Washington, D.C., in the late 1980s. *United States v. Harris, et al.*, 959 F.2d 246 (D.C. Cir.), *cert. denied* 506 U.S. 933 (1992). Appellant thereafter filed a series of motions collaterally attacking his convictions. In 2012, he filed a motion pursuant to Section 2255 that consolidated twelve challenges to his convictions. As relevant, appellant argued that (1) his CCE conviction and sentence should be vacated pursuant to *Rutledge v. United States*, 517 U.S. 292, 307 (1996), which held that conspiracy under 21 U.S.C. § 846 is a lesser included offense of CCE, and (2) four of his five 18 U.S.C. § 924(c) convictions must be vacated under *United States v. Anderson*, 59 F.3d 1323, 1334 (D.C. Cir. 1995), which held that a defendant may only be charged with one violation of Section 924(c) in relation to a single predicate crime. Appellant also sought a new sentencing hearing at which, he argued, the court should apply the updated Sentencing Guidelines and statutory changes reducing the disparity between crack and powder cocaine offenses to his remaining convictions. The government agreed the Section 924(c) convictions merged and that the conspiracy and CCE convictions cannot both stand, but argued that appellant's conviction for the lesser included offense of conspiracy should be vacated instead of his CCE conviction.

The district court granted appellant's Section 2255 motion in part. *United States v. Palmer*, 902 F. Supp. 2d 1, 4 (D.D.C. 2012). It vacated four of his Section 924(c) convictions and his conspiracy conviction and the accompanying sentences. The district court interpreted *Rutledge* to leave to "the sound discretion" of the district court whether to dismiss the lesser included offense (here, conspiracy), *id.* at 11, and decided to "not depart from standard practice" under which the conspiracy conviction, rather than the CCE conviction, would be vacated, *id*. at 12. It acknowledged that the choice "is likely to have more concrete effects on [appellant's] actual sentence than cases in which the two sentences were identical," *id*. at 12; appellant

would be eligible for parole if his CCE conviction, for which he was sentenced to life without possibility of parole, were vacated.

Appellant subsequently filed a motion for issuance of an updated judgment to reflect the district court's ruling on his Section 2255 motion and a special assessment amount limited to the non-merged convictions. On January 5, 2015, the district court entered an amended judgment, eliminating the vacated convictions and excess assessments while leaving the remaining convictions and sentences as originally imposed in 1989 upon his convictions by a jury. See chart, below.[1]

[1]

| Count | Conviction | Original Judgment (1989) | Amended Judgment (2015) |
|---|---|---|---|
| 1 | Conspiracy to distribute and possess with intent to distribute cocaine and cocaine base, 21 U.S.C. §§ 841(a) & 846 | Life (concurrent) | VACATED |
| 2 | Continuing criminal enterprise, 21 U.S.C. § 848 | Life without parole (concurrent) | Life without parole (concurrent) |
| 3 | Conspiracy to use or carry weapons during drug trafficking offense, 18 U.S.C. §§ 371 & 924(c) | 5 years (concurrent) | 5 years (concurrent) |
| 4 | Use of juveniles in drug trafficking, 21 U.S.C. § 845(b) | 20 years (concurrent) | 20 years (concurrent) |

## II.

On appeal, appellant contends that the district court erred by not applying the Fair Sentencing Act in entering the amended judgment. The question whether the district court erred in failing to apply the Fair Sentencing Act presents a question of law, and our review is *de novo*. *See United States v. Cook*, 594 F.3d 883, 886 (D.C. Cir. 2010). The government's suggestion that our review of appellant's sentencing challenge should be for plain error is not well taken. *See* Appellee Br. 21 n.9. In seeking relief pursuant to Section 2255, appellant argued that the district court should apply "the new guidelines and statutory changes that alter the [crack to powder cocaine] ratio and

| 5 | Distribution and possession with intent to distribute 50 grams or more of cocaine base, 21 U.S.C. §§ 841(a), (b)(1)(A)(iii) | 5 years (concurrent) | 5 years (concurrent) |
|---|---|---|---|
| 6, 7, 11, 16 | Unlawful use of firearm in aid of drug trafficking, 18 U.S.C. § 924(c) | 5 years each (consecutive) | VACATED |
| 8, 12 | Distribution of cocaine, § 21 U.S.C. 841(a) | 5 years each (concurrent) | 5 years each (concurrent) |
| 17 | Assault with a dangerous weapon, 22 D.C. Code § 502 | 3-9 years (concurrent) | 3-9 years (concurrent) |

Neither party mentions that the 1989 judgment refers to a "special parole term" of three years on Count 5, while this term appears in Count 17 of the 2015 amended judgment.

penalties[.]" Mot. to Vacate at 52 (Mar. 20, 2012). Although appellant did not repeat his statutory argument in seeking an updated judgment, his new motion merely sought a ministerial revision of the judgment, a procedural action authorized by Federal Rule of Civil Procedure 58(d). *See Perry v. Sheet Metal Workers' Local No. 73 Pension Fund*, 585 F.3d 358, 362 (7th Cir. 2009); *cf. United States v. Johnson*, 254 F.3d 279, 283-85 (D.C. Cir. 2001). As such, appellant's new motion neither forfeited nor waived his statutory argument; quite the contrary, he was seeking a judgment to reflect the district court's partial grant of his Section 2255 motion.

In 1989, when appellant was sentenced following his convictions at trial, the U.S. Sentencing Guidelines were mandatory. *See United States v. Booker*, 543 U.S. 220, 233 (2005). Those Guidelines reflected a 100:1 sentencing disparity for crack and powder cocaine offenses that was tied to the mandatory minimum sentences under 21 U.S.C. § 841(b)(1)(A)-(C), *see Dorsey*, 132 S. Ct. at 2327, and also incorporated into the mandatory life sentences for CCE principals involved with large quantities of unlawful drugs, Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207, 3207-15, § 1253(2) (1986). On August 3, 2010, Congress enacted the Fair Sentencing Act, which reduced the 100:1 statutory disparity to 18:1 and directed the Sentencing Commission to issue updated guidelines within ninety days. Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372, 2372, 2374, §§ 2, 8 (2010); *see United States v. Abney*, 812 F.3d 1079, 1084 (D.C. Cir. 2016).

In *Dorsey*, the Supreme Court held that the more lenient mandatory minimum penalties of the Fair Sentencing Act applied to offenders who committed a crack cocaine offense before August 3, 2010, but were not sentenced until after that date. 132 S. Ct. at 2326. Sentencing courts were confronted with two statutes that were in tension: a general federal saving statute

provided that courts should apply the sentence in effect at the time the offense occurred unless Congress "expressly provide[s]" that a later statute should be used, 1 U.S.C. § 109, and the Sentencing Reform Act of 1984 provided that courts should apply the Sentencing Guidelines "in effect on the date the defendant is sentenced," 18 U.S.C. § 3553(a)(4)(A)(ii). *See Dorsey*, 132 S. Ct. at 2330-31. The Court concluded that Congress "clearly indicated" this tension should be reconciled in favor of applying the Fair Sentencing Act to pre-Act offenders who were sentenced after the Act took effect. *Id.* at 2326. Relying "primarily upon the fact that a contrary determination would seriously undermine basic Federal Sentencing Guidelines objectives such as uniformity and proportionality in sentencing," *id.*, the Court's analysis of the timing issue considered six factors, *id*. at 2331.[2] The Court acknowledged that its approach

---

[2] The six factors are: (1) Retroactivity may be conveyed by the "plain import" or "fair implication" of a statute, rather than its express terms. *Dorsey*, 132 S. Ct. at 2332. (2) The Sentencing Reform Act required that amendments to the Sentencing Guidelines lowering a sentence "become effective to offenders who committed an offense prior to the adoption of the new amendments but are sentenced thereafter." *Id.* (3) The Fair Sentencing Act mandated the Sentencing Commission promptly update its guidelines to "achieve consistency" with the Act and "other guideline provisions," *id.* (quoting Fair Sentencing Act § 8, 124 Stat. at 2374), indicating "that Congress intended to follow the Sentencing Reform Act background principle here," *id.* (italics omitted). (4) Failing to apply the Fair Sentencing Act retroactively to pre-Act offenders sentenced post-Act "would create disparities of a kind that Congress enacted the Sentencing Reform Act and the Fair Sentencing Act to prevent." *Id.* at 2333 (italics omitted). Individuals who committed the same offense months or even days apart could face "radically different sentences," despite "roughly contemporaneous sentencing, *i.e.*, the same time, the same place, and even the same judge[.]" *Id.* (5) Failure to apply the Fair Sentence Act to pre-Act offenders sentenced post-Act would also

would create disparities based on when a pre-Act offender is sentenced, but observed that "line-drawing . . . will exist whenever Congress enacts a new law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date)." *Id.* at 2335.

This court has held on the direct appeal from a conviction that the Fair Sentencing Act is not retroactive to sentences imposed prior to its enactment. In *United States v. Bigesby*, 685 F.3d 1060 (D.C. Cir. 2012), the court concluded that "Congress's desire to have the [Fair Sentencing Act] implemented quickly," by issuance of emergency amendments to the Sentencing Guidelines, "in no way suggests that it also intended to have the Act apply retroactively to defendants sentenced before it was passed." *Id.* at 1066 (quoting *United States v. Bullard*, 645 F.3d 237, 248 (4th Cir. 2011)). Congress had a "rational basis for limiting the [Act's] retroactive effect — its 'interest in the finality of sentences.'" *Id*. (quoting *Johnson v. United States*, 544 U.S. 295, 309 (2005)). In *United States v. Fields*, 699 F.3d 518 (D.C. Cir. 2012), the court viewed *Bigesby* as consistent with *Dorsey* because "the [Supreme] Court expressly acknowledged that it was creating a disparity 'between pre-Act

---

"create new anomalies — new sets of disproportionate sentences" because such offenders would either be subject to the old, more stringent statutory mandatory minimums or receive the benefit of the updated guidelines under the Sentencing Reform Act depending on small differences in drug quantity. *Id.* at 2334. (For example, a pre-Act offender convicted of possession with intent to distribute four grams of crack who is sentenced post-Act would face a sentence of two years under the updated guidelines, while "an otherwise identical offender who possessed five grams would have to receive a 5-year sentence" under the old statutory minimums. *Id.*) (6) Finally, "no strong countervailing consideration" warranted not giving the Fair Sentencing Act this limited retroactive effect. *Id.* at 2335 (italics omitted).

offenders sentenced before August 3 and those sentenced after that date.'" *Id.* at 522 (quoting *Dorsey*, 132 S. Ct. at 2335).

Similarly, in *United States v. Swangin*, 726 F.3d 205 (D.C. Cir. 2013), the court held that a defendant seeking a reduction under 18 U.S.C. § 3582(c)(2) was not entitled to have the Fair Sentencing Act's more lenient mandatory minimums applied retroactively to his sentence. The court concluded that Section 3582(c)(2), which authorizes the district court to reduce a sentence when the term of imprisonment is calculated "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," if consistent with the applicable Commission policy statement, provides for "'only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding.'" *Id.* at 207 (quoting *Dillon v. United States*, 560 U.S. 817, 826 (2010)). "[T]hat Swangin received a § 3582(c)(2) reduction after the Fair Sentencing Act's enactment does not change the fact that he was sentenced before its enactment and is therefore subject to the rule announced in our prior decisions." *Id.* The court, like other circuits, rejected the argument that *Dorsey* required a different outcome. *Id*. at 207-08 & n. 4.

Still, it is an open question in this circuit whether, on collateral attack, the Fair Sentencing Act's reduced penalties are applicable to sentences imposed pursuant to Section 2255 upon vacatur of the challenged judgment. Section 2255 instructs the district court, upon granting the motion, to "vacate and set . . . aside" the challenged judgment, and then to "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Appellant takes a broad view, contending that the Fair Sentencing Act applies to any sentencing proceeding following the grant of a Section 2255 motion because the original judgment no longer exists and in issuing an amended judgment the district

court necessarily had to impose a new sentence. That is, the Act applies to any revision of the vacated challenged sentence, whether a correction or a resentencing. The government responds that even if the Act applies to a resentencing — as the government has argued to our sister circuits, *see, e.g.*, *United States v. Hinds*, 713 F.3d 1303, 1304 n.2 (11th Cir. 2013); *see also* Appellee Br. 20, 24 n.10 — the Act does not apply to a mere correction of a sentence as occurred here.

The text of Section 2255 indicates that Congress intended a sentence "correct[ion]" and a "resentencing" to entail different remedies that do not quite favor appellant's broad approach. First, Congress is presumed, absent indication to the contrary and there is none here, to use words in their ordinary meaning. *See Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004). Dictionaries define a "correction," as "the act or an instance of making right what is wrong," BLACK'S LAW DICTIONARY (10th ed. 2014), or "remedying or removing error or defect," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (2017). A "resentencing" in contrast, is "[t]he act or an instance of imposing a new or revised criminal sentence." BLACK'S LAW DICTIONARY (10th ed. 2014). These definitions suggest that corrections are limited to a specific type of action taken with respect to the original judgment, while resentencings could encompass a broader array of procedures. They nonetheless leave open the possibility for overlap between the two and thus are not dispositive.

Second, the Federal Rules of Criminal Procedure embrace a similar distinction. Rule 35 allows the district court to "correct a sentence that resulted from arithmetical, technical, or other clear error." FED. R. CRIM. P. 35(a). The scope of Rule 35 is intended to be narrow. *See Hill v. United States*, 368 U.S. 424, 430 (1962). The Rules Advisory Committee explained that Rule 35

> is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence. Nor should it be used to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion with regard to the application of the sentencing guidelines.

FED. R. CRIM. P. 35, Advisory Comm. Notes on 1991 Amends. ("R. 35, Advisory Comm. Notes"). Rule 35 corrections also are allowed only within fourteen days of sentencing. FED. R. CRIM. P. 35(a). The Advisory Committee further notes that a defendant may seek relief of "obvious sentencing errors" pursuant to Section 2255 after this time period has lapsed. R. 35, Advisory Comm. Notes. This explanation suggests that correction of a sentence pursuant to Section 2255 at least encompasses some of the changes that could have been made under Rule 35 but for timing. *See United States v. Coyer*, 732 F.2d 196, 200 (D.C. Cir. 1984).

Third, courts are to interpret congressional statutes in a way to avoid surplusage. *See Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1352 (2015); *Mingo Logan Coal Co. v. EPA*, 714 F.3d 608, 613-14 (D.C. Cir. 2013). Although the district court did revise appellant's original trial sentence, Section 2255's mandate to vacate the challenged judgment upon granting relief affords the district court distinct remedial options. Congress added the phrase "correct the sentence" to legislation proposed by the Judicial Conference of the United States in 1943 to allow courts upon a collateral attack to "discharge the prisoner or resentence him or grant a new trial as may appear appropriate." *Compare* S. 1451, 79th Cong. (1st Sess. 1945) and H.R. 4233, 79th Cong. (1st Sess. 1945) *with Report of the Judicial Conference* 24 (1943). *See also* H.R. REP. 308 on H.R. 3214, at

7 (1947) *reprinted in* LEGISLATIVE HISTORY OF THE CODIFICATION OF TITLE 28 OF THE UNITED STATES CODE ENTITLED JUDICIAL CODE AND JUDICIARY: P.L. 80-773: CH. 646, 2D SESS. (1948). Congress thus contemplated a sentencing proceeding in which a correction as well as a resentencing could follow vacatur. Of course, describing the district court's revision as a correction rather than a resentencing does not necessarily compel the conclusion that it was proper, and depending on how far beyond Rule 35's boundaries a Section 2255 sentence "correct[ion]" extends may mean it is actually a "resentencing." This case does not present those complexities.

Here, appellant contends that "the district court did not issue the new judgment to correct a mathematical or technical mistake," and that he "was entitled to more than a Rule 35-type correction of his sentence." Reply Br. at 4. We agree that the district court did not correct a mathematical or technical mistake in the original sentence, and although Rule 35 also refers to corrections resulting from "other clear error," neither was the district court "fixing judicial gaffes" in that sentence. *United States v. McHugh*, 528 F.3d 538, 540 (7th Cir. 2008); *see also United States v. Arrington*, 763 F.3d 17, 24 (D.C. Cir. 2014). Rather, the district court revised the original sentence in view of the change in the law on merger since appellant was sentenced at trial. In so doing, the record indicates, clearly, that the district court did no more than mechanically vacate the unlawful convictions (and accompanying sentences) for the five counts that had merged under *Rutledge* and *Anderson* after applying the "standard practice," in this and other circuits,[3] of vacating the

---

[3] See, in this circuit, *United States v. Mahdi*, 598 F.3d 883, 897 (D.C. Cir. 2010), and *United States v. Hoyle*, 122 F.3d 48, 49 n.1 (D.C. Cir. 1997), and, in other circuits, *Lanier v. United States*, 220 F.3d 833, 841 (7th Cir. 2000) (citing cases); *United States v. Brito*, 136 F.3d 397, 408 (5th Cir. 1998); *United States v. Avery*, 128 F.3d

lesser included offense of conspiracy. Otherwise, the district court left appellant's original sentence in place, unaltered.

The district court was required to do no more, for Section 2255(b) accords it discretion in choosing from among four remedies, "as may appear appropriate." *See United States v. Haynes*, 764 F.3d 1304, 1310 (11th Cir. 2014); *Ajan v. United States*, 731 F.3d 629, 633 (6th Cir. 2013); *United States v. Savoca*, 596 F.3d 154, 161 (2d Cir. 2010); *United States v. Jones*, 114 F.3d 896, 897 (9th Cir. 1997). Although appellant did obtain more than a Rule 35 correction of his original sentence, because there was no clear error to fix within fourteen days of his original sentence, he was not resentenced based upon a reevaluation of the sentence that should be imposed for his convictions. The district court took none of the actions that the Advisory Committee cautioned would fall outside of the scope of a Rule 35 correction, such as reconsidering the appropriateness of appellant's 1989 sentence. Neither did the district court conduct any of the usual procedures for a full blown resentencing hearing: "The probation office did not prepare a new [presentence report], the district court did not accept any new evidence or any legal argument, and [appellant] was not given the opportunity to allocute[.]" *United States v. Hadden*, 475 F.3d 652, 667 (4th Cir. 2007). Instead, the district court acted, as the Rule 35 Advisory Committee contemplated, to correct "clear error" that arose after the time for correction under Rule 35 had expired. Section 2255 contemplates a sentencing proceeding as one of the options upon a successful collateral attack, unlike 18 U.S.C. § 3582(c)(2), *see Dillon*, 560 U.S. at 825, but a revision to eliminate clear error due to subsequent development of the law on merger of offenses reflects "a limited adjustment to an

966, 972 (6th Cir. 1997). The Sixth Circuit has recognized an exception where the lesser included offense carries a greater sentence. *See United States v. Chambers*, 944 F.2d 1253, 1269 (6th Cir. 1991).

otherwise final sentence and not a plenary resentencing proceeding," *Swangin*, 726 F.3d at 207 (quoting *Dillon*, 560 U.S. at 826). And it did not change the fact that appellant was originally sentenced before the Fair Sentencing Act was effective. *See id.*; *see also Fields*, 699 F.3d at 522.

Appellant nonetheless disputes that the district court could enter "a new judgment excising the vacated counts without considering the remaining sentences or undoing the entire knot of calculation underlying the original sentencing." Reply Br. 4 (internal quotation marks omitted). This court has acknowledged the pertinence of a sentencing scheme in determining that a remand for resentencing is required, *see United States v. Rhodes*, 106 F.3d 429, 433 (D.C. Cir. 1997), and that sentences for individual counts may be so intertwined that a remand for resentencing is appropriate, *United States v. Townsend*, 178 F.3d 558, 566-69 (D.C. Cir. 1999). *Cf. United States. v. Morris*, 116 F.3d 501, 504 (D.C. Cir. 1997). Yet not every judgment involving multiple convictions presents a sentencing package in which vacating the sentence on one count unravels the remaining sentences. *E.g.*, *United States v. Smith*, 467 F.3d 785, 789-90 (D.C. Cir. 2006). Further, this court has repeatedly concluded that resentencing is unnecessary where, as here, the district court merely vacated convictions for lesser included offenses subject to merger. *See, e.g.*, *United States v. Battle*, 613 F.3d 258, 266 (D.C. Cir. 2010); *United States v. Baylor*, 97 F.3d 542, 548 (D.C. Cir. 1996); *United States v. Lewis*, 482 F.2d 632, 647 (D.C. Cir. 1973).

Appellant has pointed to no basis to conclude that the district court presiding at his criminal trial imposed a harsher sentence on the greater offense than it would have in the absence of the lesser offense; in that sense, too, there was no need for the district court here to entertain a resentencing. *See United States v. Fields*, 72 F.3d 1200, 1210 (5th Cir. 1996). The only rationale

appellant offers in support of a sentencing package theory is that had the district court chosen to vacate his CCE conviction, rather than his conspiracy conviction, he would be eligible for parole. Even assuming a resentencing would be required to take into account the possibility of parole, *cf. Smith*, 467 F.3d at 789-90; *Townsend*, 178 F.3d at 568, that is not what happened in appellant's case. The district court did acknowledge counsel's assertion about appellant's positive adjustments during his imprisonment, and various related letters, but nothing in the Section 2255 record indicates the district court was making a determination relative to parole itself; instead it was acknowledging, in light of the specific relief defense counsel sought for appellant, the effect of the different sentences that had been originally imposed at trial for CCE and conspiracy. *Palmer*, 902 F. Supp. 2d at 12. Appellant remains ineligible for parole just as he was before the district court partially granted his Section 2255 motion.

To the extent appellant suggests that this court should consider the district court's choice of which conviction to vacate in light of *Rutledge* to be an act of resentencing in and of itself, he ignores this court's understanding of "resentencing." *See generally United States v. Blackson*, 709 F.3d 36, 40 (D.C. Cir. 2013). A district court's exercise of discretion — in deciding not to depart from the "standard practice" in vacating the lesser included offense rather than the CCE conviction — also does not make its action a resentencing "in the usual sense." *Dillon*, 560 U.S. at 827; *see id.* at 825-28. Instead, the district court's decision followed standard practice in making a "limited adjustment" to appellant's original sentence as required by subsequent developments in the law on the merger of offenses. *Id.* at 826. Nothing in the record indicates that the district court was reevaluating the appropriateness of appellant's original sentence, much less his eligibility for parole. That a revision to a sentence may encompass something more than correction of

a mathematical or technical mistake under Rule 35 does not necessarily transform whatever else the district court did into a resentencing under Section 2255.

Appellant's suggestion that it violates due process to permit his pre-Fair Sentencing Act sentence to stand is also unpersuasive for lack of supporting authority, as are his assertions under the Ex Post Facto Clause and, under *Booker,* the Sixth Amendment. There is nothing constitutionally unfair about leaving appellant's non-merged convictions in place in view of the evidence at his trial and the law then in effect. *See Hughes*, 733 F.3d at 647; *Savoca*, 596 F.3d at 161. The district court recounted the district court's observations at sentencing: "[Appellant's] organization 'created havoc and misery in their path' for several years, selling an 'estimated 100 and 200 kilos of crack in[] the city,' for which they earned a total of 'perhaps as much as 5 to \$10 million,'" *Palmer*, 902 F. Supp. 2d at 4 (quoting Sent. Hg. Tr. 2 (Oct. 18, 1989)), and "[i]n the 25 years . . . on the bench, [it] ha[d] seldom, if ever, seen a case in which the evidence was as overwhelming as it was in this case . . . and particularly [as to] the guilt of Mr. Palmer," *id*. at 5 (quoting same at 7) (first and fourth brackets and second ellipsis in original). Further, *Booker* does not apply retroactively on collateral review. *See, e.g.*, *In re Zambrano*, 433 F.3d 886, 889 (D.C. Cir. 2006). Appellant's reliance on *Dorsey*, 132 S. Ct. at 2325, is misplaced; his circumstances are not comparable to those of a defendant who was originally sentenced after the Fair Sentencing Act was effective, and this court has held that the Act is not retroactive for defendants who were originally sentenced prior to the Fair Sentencing Act. *See Swangin*, 726 F.3d at 208.

In sum, the amended judgment entered by the district court did no more than apply the substantive law on merger of offenses as it had developed since appellant's sentence at trial. In so doing, the district court applied the "standard practice" to vacate

conspiracy, the lesser included offense of CCE, and then "removed the [newly existing] error[s] from [appellant's] original sentence — and thereby made it 'right' — by excising the unlawful . . . term[s]." *Hadden*, 475 F.3d at 667. This limited adjustment to appellant's original sentence is distinguishable from a resentencing in which the district court had "chang[ed] its mind about the appropriateness of the [original] sentence." R. 35, Advisory Comm. Notes. But for the intervening change in the law of merger, the district court left appellant's original sentence intact, stating "the rest of the sentences from [appellant's] original Judgment of Conviction remains as announced [in 1989.]" *United States v. Palmer*, No. 89-cr-36 at 1 (D.D.C. Sept. 26, 2012).

## III.

In addition to not deciding whether the Fair Sentencing Act applies to a resentencing pursuant to Section 2255, the court has no occasion to decide whether his conviction and sentence for CCE violates due process because 21 U.S.C. § 848(b) failed to define a criminal offense at the time of his conviction. It is procedurally defaulted. Appellant did not raise this issue in his direct appeal from his conviction, *see Harris*, 959 F.2d at 250, 252, 267, much less in seeking relief pursuant to Section 2255. Nor has appellant shown cause and prejudice for his failure to raise his due process objection on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008). In his reply brief, he maintains that there has been a "miscarriage of justice," Reply Br. 9; even if not forfeited, *see United States v. Wilson*, 605 F.3d 985, 1035 (D.C. Cir. 2010), an otherwise procedurally defaulted claim may be considered by the court only upon a showing as a factual matter that the defendant is "actually innocent," *Bousley*, 523 U.S. at 622-24, and appellant has made no such showing.

Appellant's challenge to his Section 848(b)(1)(A) conviction also does not fall within an established exception to procedural default rules. Under the law of this circuit, facial challenges to the constitutionality of presumptively valid statutes are not jurisdictional. *United States v. Baucum*, 80 F.3d 539, 540 (D.C. Cir. 1996). Further, whether an indictment charged a proper offense goes to the merits, not subject matter jurisdiction. *United States v. Cotton*, 535 U.S. 625, 630-31 (2002); *United States v. Williams*, 341 U.S. 58, 66 (1951); *see United States v. Miranda*, 780 F.3d 1185, 1189-90 (D.C. Cir. 2015); *United States v. Delgado-Garcia*, 374 F.3d 1337, 1342 (D.C. Cir. 2004); *cf. United States v. Rubin*, 743 F.3d 31, 37 (2d Cir. 2014). Additionally, the "right not to be haled into court at all upon . . . felony charge[s]" where "[t]he very initiation of the proceedings" denies a defendant due process, *Blackledge v. Perry*, 417 U.S. 21, 30 (1974); *accord Menna v. New York*, 423 U.S. 61, 62 (1975), does not apply to a due process challenge to the substantive reach of a criminal statute. *See Miranda*, 780 F.3d at 1190; *Delgado-Garcia*, 374 F.3d at 1343; *cf. United States v. Gonzáles*, 311 F.3d 440, 443 (1st Cir. 2002).

But even were appellant's contention viewed as jurisdictional or as falling within the *Blackledge*/*Menna* exception, it would fail.[4] A scrivener's error did not deprive

---

[4] The Supreme Court granted *certiorari* in *United States v. Class*, No. 15-3015 (D.C. Cir. July 5, 2016), to determine "[w]hether a guilty plea inherently waives a defendant's right to challenge the constitutionality of his statute of conviction." Pet. for Writ of Certiorari at *i*, *Class v. United States*, No. 16-424 (Sept. 30, 2016); *see* 2017 WL 670209 (Mem.). Although *Class* involves a guilty plea, it is not inconceivable that the Court might hold that a facial challenge to a statute on the ground it fails to state an offense is a jurisdictional objection or falls within the *Blackledge*/*Menna* exception, overruling this court's precedent. For this reason, we address appellant's challenge rather than hold his appeal in abeyance pending the

appellant of "fair notice" that Section 848(b)(1)(A) meant to refer to (c)(1) rather than (d)(1). *United States v. Williams*, 553 U.S. 285, 304 (2008). At the time appellant was indicted and convicted, Section 848(b) provided for life imprisonment for a principal administrator of a CCE if "the violation referred to in subsection (d)(1) of this section involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of [title 21]." 21 U.S.C. § 848(b)(2)(A) (1989). Subsection (d), however, neither included a paragraph (1) nor stated a violation; it prohibited suspended sentences and probation. Paragraph (c)(1), in contrast, defined the violations within the purview of a CCE. The statutory history of Section 848 makes clear that the reference to (d)(1) rather than (c)(1) was a "simple scrivener's error" rather than a conscious choice by Congress. *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 462 (1993). The text in (c)(1) had previously appeared as (d)(1). *See* Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 13207, 13207-14, § 1253(1) (1986); Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, 84 Stat. 1236, 1265-66, § 408 (1970). The erroneous cross-reference occurred when (d) was redesignated (c) in amending Section 848 to correct a prior statutory error where subsection (b) was followed by subsection (d), omitting (c). *See* Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181, 4382, § 6481(b) (1988).

"[A] provision which is the result of obvious mistake should not be given effect, particularly when it overrides common sense and evident statutory purpose." *United States v. Babcock*, 530 F.2d 1051, 1053 (D.C. Cir. 1976) (internal quotation marks omitted). The Supreme Court has cautioned against judicially amending a statute "to provide for what [the court] might think . . . is the preferred result." *Lamie v. U.S. Tr.*, 540 U.S. 526, 542

Supreme Court's decision in *Class*.

(2004) (quoting *United States v. Granderson*, 511 U.S. 39, 68 (1994) (Kennedy, J., concurring)) (alterations in *Lamie*). But there, even though the plain text of the statute could lead to a harsh result, the Court concluded the result was not absurd, *id.* at 536, 538, and consequently it was not inconceivable that Congress intended for the statute to operate as written, despite some evidence of a scrivener's error, *id.* at 539-42. This court applied a similar analysis in *U.S. ex rel. Totten v. Bombardier Corporation*, 380 F.3d 488 (D.C. Cir. 2004), as did the Fourth Circuit in *United States v. Childress*, 104 F.3d 47 (4th Cir. 1996), on which appellant relies. Here, in contrast, there is no plausible reading of the plain text absent recognizing and correcting for the error. Section 848(b)(2)(A) referred to "the violation referred to in paragraph (d)(1)," but (d)(1) did not exist and (d) did not describe a violation. Not departing from the "literal wording" of Section 848 would lead to "an absurd result," imposing a sentence for no stated offense, *Lange v. United States*, 443 F.2d 720, 722, 723 (D.C. Cir. 1971), and thus function as a repeal of Section 848(b) by implication, which are disfavored, *Rodriguez v. United States*, 480 U.S. 522, 524 (1987), or require the court to treat all of subsection (b) as surplusage, contrary to a basic interpretative principle, *Mingo Logan Coal Co.*, 714 F.3d at 613-14.

The drafting history and structure of Section 848 show Congress intended to refer to (c)(1), which identified the predicate violations for CCE. *Cf. United States v. Coatoam*, 245 F.3d 553, 558-60 (6th Cir. 2001). By construing Section 848(b) to refer to (c)(1), rather than a non-existent (d)(1), the court is "applying what Congress has enacted after ascertaining what it is that Congress has enacted." *Local 1976, United Bhd. of Carpenters v. NLRB*, 357 U.S. 93, 100 (1958). And because Congress' intent is clear, the rule of lenity is inapplicable. *Bifulco v. United States*, 447 U.S. 381, 387 (1980).

Accordingly, we affirm the judgment of the district court.

BROWN, *Circuit Judge*, concurring: While I agree the district court's grant of habeas relief in this action did not trigger the application of the Fair Sentencing Act's ("FSA") reduced penalties, Op. 10–12, 17, I would reach this conclusion *regardless* of whether the district court made a sentence "correction" or conducted a more complete "resentencing." The Supreme Court's rule in *Dorsey v. United States*, 132 S. Ct. 2321 (2012) was a ticket for a few trains only; that ticket has long since expired.[1]

*Dorsey* holds the FSA should apply to those defendants who completed their criminal conduct before the statute's enactment but who were *initially* sentenced after the law took effect. *Id.* at 2335–36. Specifically, the *Dorsey* Court considered application of the FSA to initial sentencings in light of two competing statutory provisions: (1) 1 U.S.C. § 109, which instructs, "[t]he repeal of any statute shall not have the

---

[1] As an initial matter, the government does not concede *Dorsey* applies to resentencings. Rather, its brief states, "[N]umerous other Circuits have held that the FSA applies to a true 'resentencing,' and the government has conceded that point *in other cases*." Gov't Br. 24 n.10 (emphasis added). The mere fact that the government had previously conceded *Dorsey* applied to resentencings in other matters is hardly dispositive for this Court's review. *See NLRB v. Local 103, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 434 U.S. 335, 351 (1978) (noting a governmental agency "is not disqualified from changing its mind"). As the Supreme Court has acknowledged, "private agreements between litigants . . . cannot relieve this Court of performance of its judicial function" in interpreting the statutes Congress passed "irrespective of [the litigants'] prior or present views." *Garcia v. United States*, 469 U.S. 70, 79 (1984). "[T]he proper administration of the criminal law cannot be left merely to the stipulation of parties." *Young v. United States*, 315 U.S. 257, 259 (1942).

Finally, this Court's oblique statement in *United States v. Law*, 806 F.3d 1103, 1105 n.1 (D.C. Cir. 2015)—buried in a footnote and noting only that the district court had "applied" the FSA on resentencing—hardly settles the legal dispute.

effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide;" and (2) 18 U.S.C. § 3553(a)(4)(A)(ii), which "says that when determining the particular sentence to be imposed in an initial sentencing, the [district] court shall consider, among other things, the sentencing range established by the Guidelines that are in effect on the date the defendant is sentenced." 132 S. Ct. at 2330–32 (emphasis omitted) (quoting 1 U.S.C. § 109; 18 U.S.C. § 3553(a)(4)(A)(ii)). Since the FSA itself directs the Sentencing Commission to amend the crack-cocaine Guidelines soon after the statute's effective date, the Court determined—in the context of an initial sentencing—Section 3553(a)(4)(A)(ii)'s "background sentencing principal" outweighed Section 109's "default rule." *Id*. at 2332–34; *see id.* at 2339 (Scalia, J., dissenting).

Fair enough; the Court acknowledged the need to draw an arbitrary line in light of contradictory statutory language, and it did so. But nothing in *Dorsey* indicates it should be extended to *resentencings*. To the contrary, the Court's six-factor analysis reveals its desire to avoid any future application of its limited holding. *See* Op. 7 n.2; *see also Dorsey*, 132 S. Ct. at 2344 (Scalia, J., dissenting) ("The Court's [majority] decision is based on six considerations, taken together, and we are not told whether any one of these considerations might have justified the Court's result in isolation, or even the relative importance of the various considerations."). Indeed, the Sixth Circuit refused to apply *Dorsey* to a resentencing following a direct appeal, noting the statutory conflict present in *Dorsey* was not present in that new context. *United States v. Hughes*, 733 F.3d 642, 645 (6th Cir. 2013) (noting Section 3553(a)(4)(A)(ii)'s direction to apply the Sentencing Guidelines that were "in effect on the date the defendant is sentenced"—the text *Dorsey* viewed as dispositive—contained

a critical exemption for resentencing on remand following direct appeal).  The Sixth Circuit, therefore, remarked:  "What the parties ask us to do in this case [apply *Dorsey* to a resentencing on remand], then, is remarkable.    The presumption created by § 109 is one that we are bound to take seriously, as the Supreme Court reminded us in *Dorsey*.  And in Hughes's case that presumption is not rebutted . . . ."  *Id*.  Accordingly, the court held the FSA did not apply to a defendant who had been resentenced following direct appeal after the statute's effective date, but who committed his crime and had been initially sentenced prior to that date.

Here, decades after Palmer's initial sentencing, we must answer yet another question:  should the FSA apply to a resentencing on habeas relief following a change in relevant substantive law?  Much like the Sixth Circuit panel in *Hughes*, I believe *Dorsey* need not be extended.  While habeas relief contemplates an exception to the finality of criminal sentences, the authority of a district court judge to alter a sentence previously imposed is narrowly circumscribed.  *Cf. Smith v. Murray*, 477 U.S. 527, 537 (1986) (noting the importance of finality in criminal proceedings and the evidentiary standard necessary to overcome it in habeas proceedings).  Indeed, in circumstances where changes in intervening law mandate reopening a sentence, Supreme Court jurisprudence generally contemplates "only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding."  *Dillon v. United States*, 560 U.S. 817, 826 (2010).  To permit more would create new anomalies in sentencing—anomalies having nothing to do with the crack/powder cocaine inequities addressed in the Fair Sentencing Act and *Dorsey*.

Accordingly, while the Court does not reach the question, *see* Op. 2, I would conclude a district court is bound to apply the law in effect at the time of initial sentencing when

constructing an amended judgment following the grant of habeas relief.  To hold otherwise would transform *Dorsey*, into an inappropriately broad exception to the rule of finality in criminal sentences; prejudice the government, which may need to fashion arguments to accommodate now-spoiled evidence; and grant a tremendous windfall to the select few defendants who manage to partially prevail on habeas motions.