COLORADO COURT OF APPEALS                                   2017COA97

Court of Appeals No. 17CA0749
El Paso County District Court Nos. 15CR3126, 15CR4048 & 16CR6133
Honorable Michael P. McHenry, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Trevelle Keshawn Johnson,

Defendant-Appellant.

APPEAL DISMISSED

Division A
Opinion by JUDGE BERNARD
Hawthorne, J., concurs
Harris, J., dissents

Announced July 13, 2017

Cynthia H. Coffman, Attorney General, Christine Brady, Senior Assistant
Attorney General, Denver, Colorado; Daniel H. May, District Attorney, Doyle
Baker, Senior Deputy District Attorney, Brien Cecil, Senior Deputy District
Attorney, Tyler Uhlenbrock, Deputy District Attorney, Colorado Springs,
Colorado, for Plaintiff-Appellee

Davide C. Migliaccio, Alternate Defense Counsel, Colorado Springs, Colorado,
for Defendant-Appellant

¶ 1    Does the same set of rules govern a court's decision to set bond in the following two categories of cases?  The first category includes cases in which the court sets bond for persons who have been charged with felonies and who are awaiting trial.  The second category includes cases in which defendants have pled guilty to felonies, courts have sentenced them to probation or placed them on deferred judgments, and the prosecution then files motions to revoke the defendants' probation or deferred judgments.

¶ 2    We answer the question "no" — meaning that the same set of rules does not apply to the two categories — for two interconnected reasons.

¶ 3    First, defendants in the two categories stand on opposite banks of the criminal justice Rubicon.  Defendants in the first category are presumed to be innocent.  But (1) defendants in the second category have admitted their guilt, so the presumption of innocence is long gone; (2) such defendants are not entitled to many of the fundamental rights that those in the first category enjoy; and (3) probation revocation and revocation of deferred judgment proceedings are focused on whether the sentences that courts originally imposed are still appropriate.

¶ 4    Second, Colorado's constitution and the pertinent bond statutes recognize this separation between the two categories.  In the first category, the law requires courts to set bond for defendants who await trial, subject only to a few clearly delineated exceptions.  In the second category, the law gives courts discretion to set bond.

¶ 5    In this case, probationer, Trevelle Keshawn Johnson, asks us to review the revocation court's decision to deny him bond in two cases.  He filed a petition requesting such review under section 16-4-204, C.R.S. 2016.

¶ 6    We dismiss probationer's petition, *see* § 16-4-204(3)(d), because we conclude that (1) his two cases fell into the second category; (2) the revocation court therefore had discretion to deny his request for bond in those cases; and (3) the court did not abuse its discretion when it denied his request for bond because the record supported its decision.

## I.    Background

¶ 7    In El Paso County criminal case number 15CR3126, probationer pled guilty to the class five felony of menacing.  With the prosecution's consent, the court entered a deferred judgment

and ordered probationer to submit to the supervision of the probation department for four years.

¶ 8     In El Paso County criminal case number 15CR4048, probationer pled guilty to the class six felony of criminal impersonation.  The court sentenced him to probation for four years, adding that this four-year period would be consecutive to the four-year deferred judgment in the menacing case.

¶ 9     Probationer entered into these plea dispositions on the same day in October 2015.

¶ 10     While probationer was serving his probation and deferred judgment in these two cases, the prosecution charged him in El Paso County criminal case number 16CR6133 with, among other crimes, first degree felony murder and robbery.  He was arrested and jailed on November 22, 2016.  He was held without bond in that case pending his combined preliminary hearing and bond hearing.

¶ 11     The record that we have is not entirely clear, but it appears that, after probationer's arrest in the murder case, the prosecution filed motions to revoke his deferred judgment in the menacing case and his probation in the criminal impersonation case.  The record

3

does not contain these motions, but we can piece together what they alleged from other documents and transcripts in the record. It looks like they alleged that probationer had violated the terms of his deferred judgment and his probation because he had committed the offenses with which he had been charged in the murder case.

¶ 12    In late November 2016, the revocation court issued an arrest warrant in the menacing case because of allegations that probationer had not complied with the terms of his probation. The same thing happened in early December 2016 in the criminal impersonation case. The minute orders in the record indicate that probationer was booked into jail on both cases because of a "WFTC Warrant Failure to Comply." (Defendant was simultaneously in custody based on his arrest in the murder case.)

¶ 13    The trial court held a combined preliminary hearing and bond hearing in the murder case in mid-February 2017. Although the court found probable cause to believe that probationer had committed these crimes, it also found that the prosecution had not established that proof of his guilt was evident or that the presumption was great that a jury would convict him. The court therefore set bond at $75,000. Probationer's trial in the murder

case is pending, and he is obviously presumed to be innocent of the charges in that case.

¶ 14    In early March 2017, the revocation court held a hearing to determine whether it would grant probationer's request for bond in the menacing case and in the criminal impersonation case.

¶ 15    Probationer asserted that the revocation court should set bond in both cases because (1) the only allegation in the motions to revoke his probation and his deferred judgment was that he had been charged with new crimes in the murder case; (2) he was presumed innocent of those new crimes because the charges had not yet been resolved; (3) he had done well while on probation and on the deferred judgment because he had appeared at all his appointments and because he had a job; (4) he could "get employment" if the court released him on bond; (5) he had been born and raised in the local community, and his family supported him; and (6) he was only nineteen years old.

¶ 16    The prosecution replied that section 16-4-103(5), C.R.S. 2016, which lists criteria that a court should consider when setting and selecting the type of bond, applied to probationer's request for bond. (We conclude below that a different statute controls the resolution

5

of this petition, but it appears to us that the revocation court implicitly focused on the proper statute.)

¶ 17    The prosecution then added that (1) probationer had "significant incentive to [flee] the jurisdiction" because he was on probation "when he committed the crimes" charged in the murder case; (2) there was a "possibility of [additional] violations of the law" if the court released probationer on bail; (3) the revocation court had "a very good indication that [he would] continue to violate" any bond conditions that the court might impose; (4) probationer had told the police in the murder case that he did not know that the robbery would result in a homicide, but he added that he and his accomplice had been "robbing people for marijuana"; (5) smoking marijuana violated the conditions of probationer's deferred judgment in the menacing case and his probation in the criminal impersonation case; (6) he had previously failed to appear in court three times in unrelated misdemeanor cases; (7) he had not reported to his probation officer during the time that he was "running from the law," which appears to be a reference to when the events in the murder case had occurred; (8) one of the victims in the menacing case had told the prosecutor that he wanted the court

to deny probationer's request for bond; and (9) the mother of the murder victim in the murder case asked the court to deny probationer's request for bond.

¶ 18 The prosecutor then told the revocation court that it would be "justified in continuing to hold [probationer] without bond based on his pattern of violating conditions of his supervision," and his probation officer could not "watch him all the time."

¶ 19 The revocation court denied probationer's request for bond in the menacing case and the criminal impersonation case. It thought that it had a "much higher degree of certainty" as to the likely outcome of the motion to revoke the deferred judgment in the menacing case and the motion to revoke probation in the criminal impersonation case than the outcome of the pending charges in the murder case. Indeed, the court added that it was making a "separate judgment" in the former two cases from that in the latter one.

¶ 20 The court added that it saw a "philosophical distinction" between preconviction and postconviction cases. This distinction also applied to the judgment that the court was required to make about whether probationer presented an excessive risk to the

7

community.  (We note that the transcript in the record contains several puzzling word choices.  For example, the transcript indicates that the court used the word "recessive" when discussing probationer's risk to the community.  But we are confident from the context of this language that the court was discussing "excessive" risk.)

¶ 21     At the end of the hearing, the revocation court set a date in April 2017 for a hearing on the prosecution's motions to revoke probationer's deferred judgment and his probation.  On that day, probationer asked the court to continue the hearing on the revocation motions until after the charges in the murder case had been resolved.  So, according to the record before us, probationer remains in custody, without regard to whether he could make the $75,000 bond in the murder case, because the revocation court denied his request for bond in the menacing case and in the criminal impersonation case.

## II.    Analysis

¶ 22     Probationer asserts that the revocation court was "constitutionally and statutorily required" to set bond in the menacing case and the criminal impersonation case "under the

circumstances present" in those cases. The court therefore "abused its discretion and exceeded its jurisdiction" when it "refus[ed] to set . . . bond." As a result, probationer "is being unconstitutionally held without bond."

¶ 23 His contention focuses on Colorado Constitution article II, section 19(1), and section 16-4-101(1), C.R.S. 2016. He asserts that the motions to revoke in the menacing case and the criminal impersonation case are "new charges." He therefore has a *right* to bond on these "new charges," he continues, because he has not yet been "convicted" of them. *See* Colo. Const. art. II, § 19(1) ("All persons shall be bailable by sufficient sureties pending disposition of charges . . . ."); § 16-4-101(1) ("All persons shall be bailable by sufficient sureties . . . .").

¶ 24 We generally review a trial court's decision to grant or to deny bond for an abuse of discretion. *See, e.g.*, *People v. Hoover*, 119 P.3d 564, 566 (Colo. App. 2005). But probationer also presents us with a legal question, which we review de novo. *People v. Blagg*, 2015 CO 2, ¶ 11.

¶ 25 We disagree with probationer's contentions for the following reasons.

¶ 26    First, the "shall be bailable" language found in Colorado Constitution article II, section 19(1) "gives the criminally accused the right to a bail bond, *pending adjudication of the charges against him . . . .*" *Blagg*, ¶ 12 (emphasis added). The roots of the "shall be bailable" language are found in the presumption of innocence. *See Stack v. Boyle*, 342 U.S. 1, 4 (1951)(The "traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.")(citation omitted).

¶ 27    As we explain in more detail below, the presumption of innocence does not apply to the issues in this appeal because probationer stands convicted of criminal impersonation and menacing. The motions to revoke his probation and his deferred judgment do not focus on whether the law presumes him to be innocent of the crimes with which the prosecution charged him in the murder case. Instead, those motions concern the entirely different issue of whether the sentences that the court originally

imposed in the menacing case and the criminal impersonation case were still appropriate.

¶ 28 Second, probationer recognizes, of course, that there are exceptions to this "shall be bailable" language. As is pertinent to our analysis, Colorado Constitution article II, section 19(2.5) creates one of them. "The court *may* grant bail after a person is convicted, *pending sentencing* or appeal, only as provided by statute enacted by the general assembly . . . ." § 19(2.5)(a) (emphasis added). And a court cannot exercise its discretion to grant bond in this circumstance unless it finds that (1) the defendant "is unlikely to flee and does not pose a danger to the safety of any person or the community," § 19(2.5)(b)(I); and (2) an appeal "is not frivolous or is not pursued for the purpose of delay," § 19(2.5)(b)(II).

¶ 29 This exception to the "shall be bailable" language means that "[t]here is no constitutional right to bail after conviction in Colorado." *People v. Roca*, 17 P.3d 835, 836 (Colo. App. 2000). Or, to put it another way, Colorado's "constitution does not establish a right to bail after trial; it merely allows the legislature to authorize post-trial bail, and only for certain defendants . . . ." *Hoover*, 119 P.3d at 566.

11

¶ 30    In response to section 19(2.5)(a), the legislature has defined the circumstances in which a person is eligible for bond after being convicted.  As is pertinent to our analysis, section 16-4-201.5(1) and (2), C.R.S. 2016, say the same things as section 19(2.5)(a), (b)(I), and (b)(II) of our constitution say.  Indeed, as our supreme court has recognized, since 1972

> matters concerning the types and conditions of both pretrial and post-conviction bail bonds, the requirements for setting and modifying those bonds, and the review of such settings or modifications, as well as matters concerning the forfeiture, termination, and enforcement of bail bonds and exoneration from bond liability have, within constitutional limitations, *see* Colo. Const. art II, § 19, been governed by statute in this jurisdiction.

*People v. Jones*, 2015 CO 20, ¶ 7.

¶ 31    (We note that there is at least one other statutory statement about bond that applies to certain probation revocation hearings.  Section 16-11-205(3), C.R.S. 2016, states that, after a probation officer arrests a probationer without a warrant, "[a]ny probationer *so arrested* . . . may be admitted to bail pending [a] probation revocation hearing."  (Emphasis added.)  This statute does not apply to this case because probationer was not "so arrested."  He was

instead arrested pursuant to a warrant. Such arrests are different circumstances that are covered by a different subsection, section 16-11-205(6), which does not make any reference to bond.)

¶ 32    Third, there is no doubt that probationer stood convicted after he pled guilty to a deferred judgment in the menacing case, *see Hafelfinger v. Dist. Court,* 674 P.2d 375, 376 (Colo. 1984)("In the context of the bail bond statute, a plea of guilty, when accepted by the court which grants a deferred judgment and sentence, constitutes a conviction."), and after he pled guilty in the criminal impersonation case, *see* § 16-7-206(3), C.R.S. 2016 ("The acceptance by the court of a plea of guilty . . . acts as a conviction for the offense."); *Swift v. People,* 174 Colo. 259, 263, 488 P.2d 80, 82 (1971)(noting that in its general, popular, and "frequently . . . ordinary" sense, the word "conviction" means the establishment of guilt by a trial verdict or a guilty plea before sentence or judgment)(citation omitted).

¶ 33    Fourth, the revocation of probation or of a deferred judgment "is not part of a criminal prosecution and constitutes only a reconsideration of the original sentence." *People v. Preuss,* 920 P.2d 859, 860 (Colo. App. 1995). The purpose of probation revocation

13

proceedings is not "to punish a defendant for a new crime." *Id.* at 861. Instead, their purpose is to "ascertain an appropriate sentence for an offense of which defendant has already been convicted and for which probation was granted." *Id.*

¶ 34　　To put it another way, "the concern" in a probation revocation hearing "is whether the alternatives to incarceration which have been made available to a defendant remain viable for him." *People ex rel. Gallagher v. Dist. Court*, 196 Colo. 499, 502, 591 P.2d 1015, 1017 (1978). "[A] probation revocation order operates not as a determination of guilt or innocence as to the question of whether the defendant violated the terms of his probation, but primarily as a reassessment of the correctness of the original sentence." *Id.*; *accord People v. Firth*, 205 P.3d 445, 452 (Colo. App. 2008).

¶ 35　　The same "concern" applies to the revocation of a deferred judgment. "[I]n the imposition of a previously deferred judgment and sentence, as in a probation revocation, the trial court need only ascertain the appropriate sentence for an offense to which the defendant has already pleaded guilty." *People v. Lopez*, 97 P.3d 223, 225-26 (Colo. App. 2004).

¶ 36    Fifth, a probationer facing a revocation hearing "is not entitled to claim the full range of constitutional guarantees available to one who has not yet been convicted of a crime." *People v. Atencio*, 186 Colo. 76, 78, 525 P.2d 461, 462 (1974); *see also Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)("We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.").

¶ 37    Indeed, there are "critical differences between criminal trials and probation revocation hearings[.]" *Atencio*, 186 Colo. at 79, 525 P.2d at 462. The rights of "a probationer facing revocation" are "'significantly reduced' when compared to a defendant facing substantive criminal charges." *Finney v. People*, 2014 CO 38, ¶ 27 (quoting *Byrd v. People*, 58 P.3d 50, 56 (Colo. 2002)). For example, probationers do not have the right to a jury trial at a probation revocation hearing or the right to plead not guilty by reason of insanity. *Id.* They may not have the protection of the Fourth Amendment's exclusionary rule or the protections of the *Miranda* rule, named for *Miranda v. Arizona*, 384 U.S. 471 (1966). *Finney*, at ¶ 27. And the prosecution can ask the court to use their invocation

15

of the Fifth Amendment against them if they rely on it to refuse to answer questions.  *Id.*

¶ 38    These same limitations apply to deferred judgment revocation hearings.  *See* § 18-1.3-102(2), C.R.S. 2016 (noting that a motion to revoke a deferred judgment is subject to the "procedural safeguards required in a revocation of probation hearing").  Indeed, *Finney* concerned a revocation of a deferred judgment.  *See Finney*, ¶¶ 22-24.

¶ 39    Sixth, courts in other jurisdictions have held that probationers do not have a right to bond in probation revocation proceedings. *See In re Whitney*, 421 F.2d 337, 338 (1st Cir. 1970)("[T]he Eighth Amendment does not guarantee a right to bail pending revocation of probation."); *Martin v. State*, 517 P.2d 1389, 1398 (Alaska 1974)(A probation revocation proceeding is not a criminal prosecution that adjudicates guilt or innocence, so the Alaska Constitution did not give a probationer the right to bail before a probation revocation hearing.); *Genung v. Nuckolls*, 292 So. 2d 587, 588 (Fla. 1974)("[A] probationer . . . does not have a constitutional right to bail in probation . . . revocation proceedings."); *State v. Burgins*, 464 S.W.3d 298, 304 n.2 (Tenn. 2015)("A defendant who has been

convicted of a crime does not have a constitutional right to bail. The trial court, however, in its discretion and pursuant to applicable law, may grant bail to a defendant in a probation revocation proceeding."); *Ex parte Ainsworth*, 532 S.W.2d 640, 641 (Tex. Crim. App. 1976)("[A] probationer is not entitled to bail as a matter of right pending a hearing on the State's motion to revoke probation, but . . . a person so situated may be admitted to bail by the court in the exercise of its discretion.").

¶ 40     Applying these principles to this case, we conclude that probationer did not have a right to bond in the menacing case and the criminal impersonation case because

- he had been convicted in those cases, *see* § 16-7-206(3); *Hafelfinger*, 674 P.2d at 376; *Swift*, 174 Colo. at 263, 488 P.2d at 82;

- the probation revocation and the deferred judgment revocation motions that he faced were designed (1) to "ascertain an appropriate sentence" in both cases, *Preuss*, 920 P.2d at 861; *see also Lopez*, 97 P.3d at 225-26; (2) to decide whether "alternatives to incarceration . . . remain viable," *Gallagher*, 196 Colo. at

17

502, 591 P.2d at 1017; and (3) to "reassess[] . . . the correctness of the original sentence," *id.*;

- the probation and deferred judgment revocation motions were *not* (1) "part of a criminal prosecution," *Preuss*, 920 P.2d at 860; (2) designed to punish probationer for a new crime, *see id.*; and (3) designed to "determin[e] . . . guilt or innocence as to the question of whether the defendant violated the terms of his probation," *Gallagher*, 196 Colo. at 502, 591 P.2d at 1017; and

- (1) there are "critical differences between criminal trials and probation revocation hearings," *Atencio*, 186 Colo. at 79, 525 P.2d at 462; (2) probationer was not entitled to the full panoply of constitutional protections afforded to people who have not been convicted of crimes, *see id.*; and indeed (3) his rights were "'significantly reduced' when compared to a defendant facing substantive criminal charges," *Finney*, ¶ 27 (quoting *Byrd*, 58 P.3d at 56).

¶ 41    We next conclude that section 19(2.5)(a) and section 16-4-201.5(1) apply to this case because probationer had been

18

"convicted" and he was "pending sentencing." *See Gallagher*, 196 Colo. at 502, 591 P.2d at 1017; *Lopez*, 97 P.3d at 225-26; *Preuss*, 920 P.2d at 860. This means that the revocation court had *discretion* to grant probationer's request for bond because both section 19(2.5)(a) and section 16-4-201.5(1) state that "[t]he court *may* grant bail after a person is convicted, pending sentencing . . . ." But the revocation court's discretion was qualified by section 19(2.5)(b)(I) and section 16-4-201.5(2)(a). Both provisions state that a court "shall not set bail that [they] . . . otherwise allow[]" unless the court also finds that a probationer "is unlikely to flee and does not pose a danger to the safety of any person or the community . . . ." § 19(2.5)(b)(I); § 16-4-201.5(2)(a).

¶ 42    The revocation court discussed whether probationer represented a danger to the safety of any person or to the community. Indeed, the record indicates that the court found that he posed an excessive risk to the community's safety.

¶ 43    We further conclude that the record supports this finding. For example, the court found probable cause to believe that probationer had committed, among other crimes, felony murder and robbery,

and the prosecution quoted probationer as saying that he and his accomplice had been robbing people for marijuana.

¶ 44    We therefore finally conclude that the revocation court did not abuse its discretion when it denied probationer's request for bond in the menacing case and the criminal impersonation case.  The court's decision was not manifestly arbitrary, unreasonable, or unfair, and it did not misconstrue or misapply the law.  *See People v. Fallis*, 2015 COA 75, ¶ 4 (evaluating a defendant's petition to review bond conditions under section 16-4-204 for an abuse of discretion).

¶ 45    We address one final point, which is whether probationer was entitled to bond because the motions to revoke his probation and his deferred judgment were based on a new crime, i.e., the murder case.  But, as we have demonstrated above, the reason for the revocations does not matter because the revocation court has to "reassess[] . . . the correctness of the original sentence."  The court will not "determin[e] . . . guilt or innocence as to the question of whether [probationer] violated the terms of his probation." *Gallagher*, 196 Colo. at 502, 591 P.2d at 1017.

¶ 46     There is no principled way to distinguish between giving probationers a right to bond if revocation motions are based on new offenses and giving revocation courts discretion to deny them bond if revocation motions are based on technical violations. As we recognized in the previous paragraph, the issue in probation revocation hearings focuses on whether the original sentence is still correct, not on issues of guilt or innocence. *See id.*

¶ 47     We understand that, in *Finney*, our supreme court stated that "a revocation defendant facing a new substantive criminal offense is entitled to a penalty advisement under section 16-7-206 because the defendant is being 'charged with an offense.'" *Finney*, ¶ 21. We see this as no more than a recognition that probationers in such circumstances should be advised of the consequences of their pleas. *Finney* did not discuss the issue of bond in probation and deferred judgment revocation proceedings, so it did not have an opportunity to address the applicability of section 19(2.5)(a) and section 16-4-201.5.

¶ 48     The petition filed under section 16-4-204 is dismissed.

        JUDGE HAWTHORNE concurs.

        JUDGE HARRIS dissents.

21

JUDGE HARRIS, dissenting.

¶ 49    A defendant is eligible for bond under one of two statutes: section 16-4-102, C.R.S. 2016 — which governs bond "before conviction" — or section 16-4-201, C.R.S. 2016 — which governs bond "after conviction." The majority announces a new rule that a defendant awaiting adjudication of a petition to revoke probation or a deferred judgment is subject to section 16-4-201 (bond "after conviction") because he has been convicted of the underlying offense for which he received a sentence of probation or a deferred judgment. That argument may have some appeal at first blush, but it is soundly refuted by the relevant statutes. Because we are bound by the applicable statutory text, which makes clear that a probationer is entitled to bond in accordance with section 16-4-102, I respectfully dissent.

¶ 50    Defendant, Trevelle Keshawn Johnson, pleaded guilty to felony menacing, a class 5 felony, and criminal impersonation, a class 6 felony, and the court entered a deferred judgment in the former case and imposed a sentence of probation in the latter. While he was on probation, Johnson was charged with felony murder and robbery. His probation officer filed a petition to revoke Johnson's

22

probation and deferred judgment based on the new criminal charges.

¶ 51    After a hearing in the murder case, the court ordered Johnson released on a $75,000 bond.  But when Johnson requested a bond pending adjudication of the probation violations (the same conduct for which he had just been granted bond), the court deemed him ineligible for pre-hearing release because, the court reasoned, he was seeking postconviction bond.

¶ 52    The majority embraces this anomalous result by (1) focusing on the underlying convictions, rather than the unadjudicated allegations in the revocation petition (which provide the basis for keeping Johnson in jail); and (2) disregarding language in various statutes that directs the trial court to set bond for probationers in accordance with the pretrial bond statute.

I.    Johnson is Not Seeking Bail After Conviction Under Section 16-4-201

¶ 53    According to the majority, Johnson's request for bond is governed by section 16-4-201 (entitled "[b]ail after conviction") because he has been convicted of menacing and criminal impersonation.  To be sure, Johnson's guilty pleas in those two

23

cases resulted in "convictions," which is all the cases cited by the majority say. *See Hafelfinger v. Dist. Court*, 674 P.2d 375, 376 (Colo. 1984) (statute prohibiting personal recognizance bond if defendant has a prior felony conviction applied to probationer, who sought to be released on a personal recognizance bond pending his revocation hearing, because his guilty plea in the underlying offense counted as a "conviction"); *Swift v. People*, 174 Colo. 259, 263, 488 P.2d 80, 82 (1971) (concluding that, in its technical sense, "conviction" means adjudication of guilt and sentencing, but in its ordinary legal sense, the word "conviction" means establishment of guilt, including by guilty plea, prior to and independent of judgment and sentence).

¶ 54    But from that unremarkable premise, the majority reaches the troubling conclusion that a probationer facing revocation proceedings is situated identically to a defendant seeking postconviction bond because, in both instances, all that is left for the court to do is to "ascertain an appropriate sentence."

¶ 55    That conclusion disregards the fact that, as a probationer, Johnson has a conditional liberty interest, and he cannot be deprived of that interest without due process. *People v. Scura*, 72

P.3d 431, 433 (Colo. App. 2003) ("These constitutional safeguards are required because a revocation may cause probationers or parolees to be placed in a more restrictive confinement, thereby impinging upon a liberty interest. And a defendant at liberty, even conditionally, may not be deprived of that liberty without due process."); *see also People v. Whitlock*, 2014 COA 162, ¶ 33 (A person granted probation "has attained a 'liberty interest,' which may not be taken away from him in the absence of due process.").

¶ 56    Thus, contrary to the majority's suggestion, the purpose of revocation proceedings is not simply for the court to reimpose a sentence. Before the court may reconsider the initial sentence to probation, it must first find that the government has met its burden to prove that the probationer committed the violations alleged in the petition. Only then may the court modify the sentence and impose a more restrictive punishment. *See* § 16-11-206(5), C.R.S. 2016 ("*If the court determines that a violation of a condition of probation has been committed*, it shall, within seven days after the said hearing, either revoke or continue the probation.") (emphasis added); *see also People v. Ruch*, 2013 COA 96, ¶ 32 ("Revocation of a defendant's probation involves a two-step process. First, the trial

25

court must determine whether the defendant violated the conditions of his or her probation. . . . Second, if the trial court determines that the defendant violated the terms of probation, it then has the discretion to revoke probation based on the violation."), *rev'd on other grounds*, 2016 CO 35.

¶ 57 In this way, probationers are unlike postconviction defendants. With respect to the latter category, the government has carried its burden to prove the conduct that allows the court to curtail the defendant's liberty. The next step is sentencing. But with respect to pre-revocation hearing probationers, the government has merely alleged the misconduct, and therefore the defendant has not forfeited his liberty interest. The next step is a hearing at which the government must prove the misconduct.

¶ 58 Neither *People v. Preuss*, 920 P.2d 859 (Colo. App. 1995), nor *Gallagher v. District Court*, 196 Colo. 499, 591 P.2d 1015 (1978), the cases relied on by the majority, calls this critical distinction into question.

¶ 59 *Preuss* concerned the question of whether a sentence imposed on revocation of probation may, consistent with the Double Jeopardy Clause, be ordered to run consecutively to the sentence

26

imposed for the new criminal conduct on which the revocation was based. 920 P.2d at 860. A division of this court answered that question in the affirmative, reasoning that a probation revocation proceeding is not a separate criminal prosecution for purposes of double jeopardy analysis. Rather, any penalty imposed in the initial case amounts to a resentencing. *Id.* at 860-61.

¶ 60 In *Gallagher*, the defendant attempted to enter a not guilty by reason of insanity plea at his revocation hearing. 196 Colo. at 501, 591 P.2d at 1016. The supreme court determined that the plea was not available under the simplified revocation procedures because the purposes of a full criminal trial and a probation revocation hearing were different. At a revocation hearing, once a violation is established, the court's focus is not on guilt or innocence, but on whether probation is still a viable alternative. *Id.* at 502, 591 P.2d at 1016.

¶ 61 I accept the conclusions reached in both cases, but neither decision supports the majority's view that revocation proceedings concern only re-evaluation of the original sentence, as though resentencing is an exercise independent of the existence of a violation of probation. As the supreme court has made clear, "[t]he

issues for determination in a probation revocation proceeding are whether the defendant has violated a valid condition of his or her probation and, if so, what action is appropriate *in light of the violation.*" *People v. Ickler*, 877 P.2d 863, 866 (Colo. 1994) (emphasis added).

¶ 62    Thus, in my view, the majority is focusing on the wrong "convictions." Undeniably, Johnson was convicted of menacing and criminal impersonation. But what matters is whether he has been "convicted" of the violations — in other words, whether the misconduct that might result in a further penalty has been adjudicated and resolved, leaving nothing more for the court to do except impose sentence. If not, then Johnson is not in a postconviction posture for purposes of the bond statute.

¶ 63    The language of the statute bears this out. Section 16-4-201(1)(a) permits a defendant to be released on bail after a conviction and "pending determination of a motion for a new trial or motion in arrest of judgment or during any stay of execution or pending review by an appellate court." Under section 16-4-201.5(2)(b), C.R.S. 2016, a defendant cannot be released on postconviction bond unless the court specifically finds that his

"appeal is not frivolous or is not pursued for the purpose of delay."

Section 16-4-202, C.R.S. 2016, sets forth the factors a court should consider in determining whether to grant an "appeal bond," including the defendant's likelihood of success on appeal, *see* § 16-4-202(1)(i), and section 16-4-203(1), C.R.S. 2016, instructs that, after considering those factors, the court may either "[d]eny the defendant appeal bond" or "[g]rant the defendant appeal bond." Finally, section 16-4-204, C.R.S. 2016, permits appellate review of any order setting terms and conditions of bond or "appeal bond," pursuant to "section 16-4-109 or 16-4-201."

¶ 64    Under the plain language of the statute, "bail after conviction" means bail after adjudication of the merits, pending an appeal. *See People v. Jones*, 2015 CO 20, ¶ 15 (Section 16-4-201 "authorizes the continuation of a defendant's pretrial bond or his release on another statutorily approved type of bond pending the determination of a motion for a new trial or in arrest of judgment, or during any stay of execution, or pending review by an appellate court."). Section 16-4-201 cannot apply to Johnson because he has not resolved the allegations for which he is being held in jail, and he did not seek bail pending determination of a new trial (or hearing)

or during a stay of execution, or pending review by an appellate court. At this stage of the proceedings — before the revocation hearing — Johnson has nothing to appeal. How, then, could he be granted an appeal bond?

¶ 65     This question raises a related issue. The majority says that the "presumption of innocence does not apply" here because Johnson is no longer presumed innocent of the underlying offenses. True, but beside the point. Under Colorado law, at the revocation hearing, the prosecution bears the burden of proving new criminal conduct beyond a reasonable doubt and all other alleged violations by a preponderance of the evidence. *See* § 16-11-206(3). The presumption of innocence and the prosecution's burden are "logically similar," *see Taylor v. Kentucky*, 436 U.S. 478, 484 (1978), meaning that where the prosecution has the burden of proof, the presumption of innocence is necessarily triggered. Johnson, therefore, is presumed innocent of the felony murder and robbery charges, which form the basis of the petition to revoke probation and the deferred judgment. The presumption is overcome only after the prosecution proves the violation conduct or the probationer admits to it.

¶ 66    So, if the "roots of the 'shall be bailable' language are found in the presumption of innocence," as the majority posits, a probationer is "bailable" under sections 16-4-101 and -102, C.R.S. 2016, until the presumption is overcome.  At that point, he is no longer presumed innocent of the violation conduct and joins the ranks of "postconviction" defendants who must seek an appeal bond under section 16-4-201.  Johnson, then, is not in a "postconviction" posture until after the revocation hearing.

   II.    Johnson is Entitled to Bail Before Conviction" Under Section 16-4-102

¶ 67    In determining that Johnson's request for bond is governed by 16-4-201, the majority shrugs off statutory provisions that confirm Johnson's right to bail under section 16-4-102.  Indeed, the majority's analysis proceeds as though the question is entirely open when, in fact, two statutes governing revocation of probation provide a definitive answer.

¶ 68    Under section 16-11-205, C.R.S. 2016, probation revocation proceedings may be initiated by either the arrest of the probationer, *see* § 16-11-205(1), (6), or by the issuance of a summons, *see* § 16-11-205(2); *see also People v. Galvin*, 961 P.2d 1137, 1138-39

31

(Colo. App. 1997) (explaining different ways revocation proceedings may be initiated). The arrest may be with a warrant, § 16-11-205(6), or without one, § 16-11-205(1)(b)-(f).

¶ 69 Section 16-11-205(3) instructs that, if the probation officer makes a warrantless arrest, "the probationer shall be taken without unnecessary delay before the nearest available judge," and that "[a]ny probationer so arrested shall have all of the rights afforded by the provisions of this code to persons incarcerated before trial of criminal charges and may be admitted to bail pending probation revocation hearing."

¶ 70 The majority dismisses this provision in a parenthetical, noting that Johnson was arrested pursuant to a warrant, a circumstance covered by section 16-11-205(6). That provision describes the circumstances under which a warrant will issue and how it may be executed, but, as the majority observes, "does not make any reference to bond."

¶ 71 So, by the majority's reading, a probationer arrested without a warrant must be treated as a pretrial detainee, and subject to section 16-4-102, while a probationer otherwise identically situated, but arrested pursuant to a warrant, is considered a "postconviction"

detainee and subject to section 16-4-201. The majority does not explain, and I cannot imagine, why the statute would treat those two categories of probationers differently for purposes of bond eligibility. As a fundamental matter of statutory construction, we must avoid an interpretation of a statute that leads to an illogical or absurd result, *see, e.g.*, *Stanley v. Dist. Attorney*, 2017 COA 33, ¶ 10, or that raises equal protection concerns, *see Juhl v. People*, 172 P.3d 896, 901 (Colo. 2007).

¶ 72    But a more logical and harmonious reading of those provisions is possible. *See People v. Dist. Court*, 713 P.2d 918, 921 (Colo. 1986) ("Where possible, the statute should be interpreted so as to give consistent, harmonious, and sensible effect to all its parts. If separate clauses within a statute may be reconciled by one construction but would conflict under a different interpretation, the construction which results in harmony rather than inconsistency should be adopted.") (citations omitted). In my view, section 16-11-205 makes clear that a probationer is bailable pending his revocation hearing. Either he is summoned to a hearing, in which case the issue of bond is moot, or he is arrested and must be treated as a pretrial detainee for bond purposes. § 16-11-205(3).

The reason section 16-11-205(6), which addresses issuance of a warrant, does not reiterate section 16-11-205(3)'s directive about bond is because an arrest warrant generally sets forth a bond amount.

¶ 73 Under Crim. P. 4(b)(1)(IV), a warrant must "[h]ave endorsed upon it the amount of bail if the offense is bailable." *See also* Crim. P. 9(b)(1) (warrant issued upon indictment shall conform to requirements of Rule 4(b)(1)). I acknowledge that Rules 4 and 9 apply to the initiation of new criminal cases, but there is no indication in any rule or statute that the form of a warrant issued to initiate a revocation proceeding is subject to a different rule.

¶ 74 Thus, when a probationer is arrested on a warrant, he will generally be released on bond pursuant to the terms of the warrant itself. To the extent he is detained (either because the bond amount is not endorsed on the warrant or the arrest was made without a warrant), the probationer shall be treated like a pretrial detainee and must be brought in front of a judge to be released on bail under terms and conditions set by the court.

¶ 75 The majority reminds us that a revocation proceeding differs from a full-fledged trial, and that some states have held that a

probationer does not have a constitutional right to bail. I assume these pronouncements are offered for the purpose of supporting its position that probationers should not be treated like pretrial detainees. But in light of the statute's directive to the contrary, the pronouncements are not compelling.

¶ 76    I believe that section 16-11-205, on its own, establishes that a probationer is entitled to bond "before conviction" under section 16-4-102. Still, to the extent section 16-11-205 is less than definitive, any ambiguity is cleared up by section 16-11-206.

¶ 77    That provision provides:

> At the first appearance of the probationer in court or at the commencement of the hearing, whichever is first in time, the court shall advise the probationer as provided in section 16-7-207 insofar as such matters are applicable; except that there is no right to a trial by jury in proceedings for revocation of probation.

§ 16-11-206(1), *as amended by* Ch. 264, sec. 34, § 16-11-206, 2017 Colo. Sess. Laws 1392; *see also* § 18-1.3-102(2), C.R.S. 2016 (In a proceeding to revoke a deferred judgment, "the procedural safeguards required in a revocation of probation hearing shall apply.").

¶ 78    Under section 16-7-207, C.R.S. 2016, the court must "inform the defendant and make certain that the defendant understands [that] . . . [t]he defendant has a right to bail, if the offense is bailable, and the amount of bail that has been set by the court." § 16-7-207(1)(e).

¶ 79    True, 16-11-206(1) contemplates that certain "matters" covered in section 16-7-207 may not be "applicable" to revocation hearings, but the right to bail is not one of them.  Section 16-7-207 consists of two distinct subsections.  All of the rights delineated in subsection (1), with the exception of the right to a jury trial, appear to be applicable to revocation proceedings.  *See* § 16-7-207(1)(a)-(g) (the court must inform the defendant that he has the right to remain silent and the right to be represented by counsel, that any plea must be voluntary, and of the charges against him).  By singling out the right to a jury trial as the "matter" that does not apply to revocation hearings, *see* § 16-11-206(1) ("except that there is no right to a trial by jury in proceedings for revocation of probation"), *as amended by* 2017 Colo. Sess. Laws at 1392, the legislature has signaled that the other rights do apply.  *See Cain v. People*, 2014 CO 49, ¶ 13 (statute's inclusion of a single exception

demonstrates General Assembly's intent to exclude other potential exceptions).

¶ 80    Pursuant to the unambiguous language of sections 16-11-206 and 16-7-207, a probationer "has a right to bail, if the offense is bailable." All offenses are bailable, with the exception of a handful of offenses delineated in section 16-4-101. *See Jones*, ¶ 7 (Sections 16-4-101 and 102 "affirm that all persons, with certain narrowly defined exceptions, are bailable.").

¶ 81    Johnson is being detained pursuant to warrants issued in his class 5 felony menacing case and his class 6 felony criminal impersonation case. There does not appear to be any dispute that these offenses are "bailable" under section 16-4-101. Thus, he is eligible for bond under section 16-4-102.

¶ 82    In her response to Johnson's petition for review, the Attorney General argues not that Johnson is subject to section 16-4-201 (bail after conviction), but that the district court had discretion to deny Johnson bond under section 16-4-103(5), C.R.S. 2016, notwithstanding the fact that Johnson's underlying offenses were "bailable." I disagree.

¶ 83   Section 16-4-103, entitled "Setting and selection type of bond — criteria," lists factors the court may consider in "making a determination of the type of bond and conditions of release."  *See* § 16-4-103(5).  According to the Attorney General, the court could properly rely on these factors to *deny* bail.  But subsection (1) of section 16-4-103 makes clear that the court must set a bond if the person is bailable.  *See* § 16-4-103(1) ("[T]he court . . . shall determine the type of bond and conditions of release unless the person is subject to the provisions of section 16-4-101."); *see also Jones*, ¶ 7 ("[A]s long as the offense for which [a person] was arrested is bailable, [he] "shall have bond and conditions of release set by the court.").  Thereafter, the court may look to the other provisions of section 16-4-103 in determining appropriate terms and conditions of bond.  The court has discretion to fashion the conditions of release, but not to deny bail in the first instance.

¶ 84   Because I conclude that the court erred in refusing to set a bond in this case, I would remand with instructions to the court to release Johnson on bail under terms and conditions the court deems appropriate.

38